PHILIP S. LADD *vs.* AUGUSTA SAVINGS BANK.

Kennebec.    Opinion July 15, 1902.

*Savings Bank.    By-Laws.    Lost Book.    Impostor.    Payment by Check.    Forged Order. · Evidence.    Contracts.*

If a comparison by the officers of a savings bank of the signature of the person falsely presenting a deposit book with the genuine one of the depositor on file would be sufficient to prevent fraudulent imposition, then payment to an impostor without such comparison, and without requiring any proof of the identity of the person demanding payment, other than the possession of the bank-book, is no defense to an action by a depositor against the bank to recover his deposit.

A by-law governing the relations of a savings bank with its depositors which states as the reason for its existence that " the officers of the institution may be unable to identify every depositor, transacting business at the bank," is not applicable to cases where the officers would be able to protect the interests of the depositor with the exercise of reasonable diligence.

The adoption of rules, regulations and conditions which affect the contractual relations between a savings bank and its depositors may be shown by their long use, with the knowledge and approval of the trustees, as well as by record of a formal vote.

The signature of a depositor thereto, is not the only way to show his agreement to be bound by the rules and regulations of a savings bank.   The agreement may be evidenced by his conduct.

The negligence of a depositor in a savings bank in losing his book does not excuse the officers of the bank from the exercise of reasonable care in taking precautions to prevent payment to an impostor.   This is true, notwithstanding the existence of a by-law in effect requiring immediate notice to the bank by the depositor of the loss of his book.

Payment by a savings bank to an impostor in the form of a check on a commercial or national bank payable to the order of the real depositor, does not exempt the savings bank from liability to the true owner of the deposit.

As to forged orders, *held;* that, under a by-law providing in effect that money be withdrawn by the depositor or by any other person duly' authorized to receive it, the officers of the bank must decide upon the genuineness of the authority presented at their peril.

On report.    Judgment for plaintiff.

Assumpsit for the amount of a savings bank deposit.

The facts are fully stated in the opinion.

*H. M. Heath and C. L. Andrews,* for plaintiff.

*L. C. Cornish and N. L. Bassett,* for defendant.

Counsel cited, among other cases :  *Jochumsen* v. *Suffolk Savings Bank,* 3 Allen, 87 ; *Kimins* v. *Five Cent Savings Bank,* 141 Mass. 33, 55 Am. Rep. 441; *Sullivan* v. *Lewiston Savings Inst.* 56 Maine, 507, 96 Am. Dec. 500; *Hayden* v. *Brooklyn Savings Bank,* 15 Ab. Pr. N. S. 297; *Appleby* v. *Erie Co. Savings Bank,* 62 N. Y. 12, 16; *Allen* v. *Williamsburg Savings Bank,* 69 N. Y. 314, 318; *Schoenwald* v. *Metropolitan Bank,* 57 N. Y. 418; *Gifford* v. *Rutland Savings Bank,* 63 Vt. 108, 11 L. R. A. 794; *Brown* v. *Merrimac River Savings Bank,* 67 N. H. 549, 68 Am. St. Rep. 700; *Geitelsohn* v. *Citizens' Savings Bank,* 17 Misc. Rep. (N. Y.) 574; *Kummel Germania Savings Bank,* 127 N. Y. 488, 13 L. R. A. 786; *Allen* v. *Williamsburg Savings Bank,* 69 N. Y. 317; *Hager* v. *Buffalo Savings Bank,* 64 N. Y. St. Rep. 25 ; *Tobin Manhattan Savings Institution,* 6 Misc. Rep. 110; *Saling* v. *German Savings Bank,* 28 N. Y. St. Rep. 975 ; *Gearns* v. *Bowery Savings Bank,* 135 N. Y. 557 ; *Eaves* v. *Peoples' Savings Bank,* 27 Conn. 229, 71 Am. Dec. 59 ; *Goldrick* v. *Bristol Savings Bank,* 123 Mass. 320.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, PEABODY, JJ.

WISWELL, C. J.    Between July 7, 1884, and Jan. 3, 1893, the plaintiff made numerous deposits in the defendant Savings Bank, which aggregated on Aug. 1, 1900, with the dividends credited by the bank up to that time, the sum of $2,947.17.    Of this amount he withdrew $850.    No part of the balance has ever been repaid by the bank to him or upon his genuine order.    But on June 10, 1895, the bank paid to a person, who falsely personated the plaintiff and presented his bank-book, the sum of $1,250, and it subsequently paid on two occasions, upon what purported to be the orders of the plaintiff, but which are now admitted to have been forgeries, the

sums of $620, and $227.17, the plaintiff's bank book being presented upon each of these occasions.

In this action the plaintiff seeks to recover the amount of his deposit less the amount withdrawn by him. It is, of course, conceded that the bank, which had received upon deposit the plaintiff's money to be repaid to him or to some person duly authorized by him to receive it, and which has not paid the same to him or upon his order, is liable, unless by virtue of some stipulation in the contract between the bank and the depositor, the payments thus made, under the circumstances of the case, constitute a defense.

So that it first becomes necessary to inquire whether or not there was any stipulation in the contract between this depositor and the. bank that would change the general rule as to the latter's liability. When this account was opened by a deposit on July 7, 1884, a bankbook was made out in the plaintiff's name with the first deposit entered to his credit, and the book was sent to, and received by him, he not being personally present upon that occasion. This individual bank-book, sent to the depositor, contained several pages of printed rules and regulations in relation to the management of the bank, making of deposits, the withdrawal of funds and in regard to other matters, among which were the following :

### DEPOSIT BOOKS.

"All deposits are entered in the Books of the corporation, and a Bank-Book given to each depositor, in which every deposit made and every sum withdrawn will be entered. This book will be the voucher and the evidence of the depositor's property in the institution, and of the same validity as a note of hand. Applications for withdrawal of funds, whether in person or by order, must always be accompanied by the Deposit Book.

In case of the loss of a deposit book, notice of such loss should be immediately given at the Bank. As the officers of the institution may be unable to identify every depositor transacting business at the Bank, the Institution will not be responsible for loss sustained, when the depositor has not given notice of his book being stolen or lost, if such book be paid in whole or in part, on presentment."

### SIGNATURE OF RULES.

"On making the first deposit, the depositor will be required to subscribe his name to the rules, regulations and by-laws of the Institution, and thereby agree to be bound by them."

This plaintiff never signed any agreement to be bound by the rules, regulations and by-laws of the institution. When the first deposit was made in this account he was not personally present, and was never required to sign any such agreement. Prior to the commencement of this account the plaintiff had had deposits in this bank which were entirely withdrawn prior to July 7, 1884, and when the first account was commenced by a deposit in 1874, he then not being personally present, his name was subscribed by the treasurer at that time to a book known as a "Depositors' Book" which contained a provision to the effect that the depositors who signed this book agreed "to accede to and abide by the rules, regulations and by-laws which are now in force or may be hereafter made for the management of said bank." But it is not claimed that this act of the treasurer in signing the plaintiff's name to this book, being neither authorized nor ratified by the plaintiff, had any binding force upon him.

One method certainly of obtaining and showing the depositor's agreement to be bound by the rules and regulations of the bank was to have him sign a contract to that effect, but this was not the only way. If a depositor in a savings bank receives from the bank a bank-book containing rules, regulations and conditions which affect his contractual relations with the bank and its liability to him, clearly printed therein, and reads them so that he knows of their existence, and continues to leave his deposit in the bank and to make additional deposits and to hold the bank book as his voucher, he must be presumed to have agreed to be bound by them, so that they will become a part of his contract with the bank. *Gifford* v. *Rutland Savings Bank*, 63 Vt. 108, 25 Am. St. Rep. 744, 11 L. R. A. 794; *Heath* v. *Portsmouth Savings Bank*, 46 N. H. 78, 88 Am. Dec. 194. Various other cases to this effect might be cited. This plaintiff had read these rules and regulations, and was consequently bound by them.

But it is claimed that this principle is not applicable in the present case, and that this plaintiff is not so bound, because no record has been introduced showing that these rules and conditions printed in the depositor's bank-book were formally adopted by a vote of the trustees of the institution.    We do not think that this is necessary. These rules regulating the methods of business, and constituting conditions in the contracts between the bank and its depositors, when in any way assented to by them, had long been in use and had been printed in the bank-book given to depositors, at least since the year 1883, and for how much longer time is unknown.    For all this period of time they had been known to the trustees and recognized by them as the rules and regulations of the bank, and they were printed in the bank-books with their approval.    Whenever changes were made in these rules, it was with the knowledge and approval of the trustees.    We think that the adoption of such rules and regulations as these, may be shown by their long use with the knowledge and approval of the trustees, as well as by the record of a former vote.

The plaintiff being bound, then, by these rules and regulations, which, by his implied assent became a part of his contract with the bank, it becomes necessary to inquire as to what extent the bank's liability to him was thereby limited, with reference to the two classes of payments, that to a person who falsely personated the plaintiff, and those upon the forged orders, the effect of the rule, as we shall later see, being different in the two cases.    First, as to its effect with reference to the payment of $1,250, to the person who claimed to be the depositor.

The rule itself contains language which shows the reason and necessity for its existence, and at the same time contains a limitation upon its effect and meaning.    The reason given is because, "the officers of the institution may be unable to identify every depositor transacting business at the bank," and this shows that the rule is only applicable to cases where the officers of the institution are unable, by the exercise of reasonable diligence, to identify the depositor, or to perceive the want of identity between the depositor and the person presenting the book for payment.    In other words,

this provision does not relieve the officers of the bank from the exercise of such care as would be reasonable, under all the circumstances of the case, in order to protect the interests of the depositor and to prevent loss to him by reason of a payment made to a person not entitled to it. That this is the true construction of this provision has frequently been decided by the courts, where by-laws precisely or substantially similar to the one in this case have been construed. *Sullivan* v. *Lewiston Institution of Savings,* 56 Maine, 507, 96 Am. Dec. 500; *Gifford* v. *Rutland Savings Bank,* supra; *Brown* v. *Merrimac River Savings Bank,* 67 N. H. 549, 68 Am. St. Rep. 700; *Kummel Germania Savings Bank,* 127 N. Y. 488, 13 L. R. A. 786. And, in fact, the counsel for the defendant very frankly concedes that this is the true construction of the regulation.

We next come to a consideration of the question as to whether or not in making this payment the officers of the institution exercised reasonable care to prevent mistake and consequent loss. This issue of fact is submitted by the parties to the determination of this court, as the case comes here upon a report of the evidence with a stipulation that the court shall render such judgment as the law and evidence require. Upon this question numerous decided cases are called to our attention upon the one hand and the other, but authorities upon this question of fact are necessarily of little value, as each case must be decided upon the facts and circumstances peculiar to it.

The bank, as we have seen, did not have the plaintiff's signature upon its depositors' book, nor upon any book, so that it could be permanently preserved, and easily and speedily referred to for the purpose of comparison. While one object of this depositors' book was to obtain the written assent of the depositor to the rules and by-laws of the bank, it would also serve as a signature book for reference and comparison. The bank at that time did not use the card system for the preservation and arrangement of signatures, so that the signatures of depositors, and also certain facts peculiarly within the personal knowledge of the depositor, might be preserved and so arranged as to be at once accessible. Nor was the plaintiff's signature in any way so preserved and filed that it could be referred to when wanted. The bank had in its possession the genuine signature

of the plaintiff on an order for the payment of money given in 1892, but this was not preserved for reference and comparison, and the treasurer, at the time of making this payment, did not know of its existence. The case disclosed nothing as to what was said and done, or what inquiries were made, when the person who falsely personated the depositor presented the plaintiff's book at the bank and requested a payment thereon, except that the treasurer testified that he presumed that he inquired if the person was Phillip S. Ladd, as it was his custom to make such inquiry. The payment of this sum of $1,250, was made by check drawn on the First National Bank of Augusta. The plaintiff's bank-book had been taken from his possession without his knowledge, but the fact was unknown to him at that time, and of course the bank had received no notice that it had been lost or stolen. At the time of this payment the Augusta Savings Bank had over six million dollars of deposits, and about twelve thousand different depositors.

We do not think that, under these circumstances, the officers of the defendant bank exercised reasonable care in taking such precautions as would be likely to prevent a mistake of this kind and in making the payment of this sum of money to a person not entitled to it. The only proof of identity required was the possession of the plaintiff's bank-book, but this is something so easily lost, and the possession of it may be so easily obtained by a person not entitled to it, that a bank of the size of this one, where only a small proportion of its depositors could be personally known to the officers of the institution, should take some further precaution to prevent mistake and loss. One that suggests itself as simple and inexpensive, but as quite effectual, owing to the well known peculiarities and characteristics of every person's handwriting, is to preserve in some convenient place for reference a signature of the depositor, when the depositor can write; and to obtain from any person unknown to the officers who claims to be a depositor, his signature for comparison with the genuine one on file in the bank.

. In our opinion, the officers of this bank, with its large deposits and numerous depositors, were negligent in not having some such means at hand to aid in the identification of its depositors and to

prevent false impersonations by swindlers. It is no answer that the first deposit was sent by mail or by messenger, because it is perfectly easy to obtain by mail the signature of all depositors who can write, even if they do not come personally to the bank. And if, for any reason, this cannot be done, then other proof of identity should be required beside the possession of the book, even if the depositor is put to some inconvenience thereby. But in this case the bank had in its possession the genuine signature of the plaintiff. It would have been a very easy matter to have so attached that order to some book, or so filed it, that it could be readily referred to whenever a person not known to the officers of the bank claimed to be a depositor and demanded a payment upon his account.

Reliance is had by the counsel for the defense upon the case of *Sullivan* v. *Lewiston Institution of Savings*, supra, where it was decided, that, "if the disbursing officer, using reasonable care and diligence, but lacking present means of identifying the depositor, pay bona fide on presentation of the book by one apparently in the lawful possession of it as the owner thereof, the institution has a right to rely upon the contract of the depositor safely to keep the evidence of his claim or make known its loss before it is presented for payment." But in that case the depositor could not write his name, he subscribed the by-laws and regulations by making his mark, the bank therefore could not have had this means of testing the identity of the person demanding payment. The circumstances of the two cases differ in other important respects.

Again, it would not necessarily follow that the methods of doing business and the means adopted for the prevention of mistakes of this kind in the year 1868, the time of the mistaken payment in the case cited, which might then have been reasonably careful and prudent, would be so, more than a quarter of a century later, when by the use of such improved methods of doing business and devices for saving time and preventing mistakes, as have been generally adopted and found beneficial in financial institutions, the loss could have been prevented.

What we decide is, that officers of a savings bank of the magnitude of this one, who in the year 1895 made a payment of as large

a sum as $1,250, to a person unknown to them, who claimed to be a depositor, and who presented the bank-book of such depositor, without having in their possession in some convenient place for ready reference and comparison the signature of that depositor, if he could write, and without obtaining the signature of the person presenting the book for such comparison, and without requiring any proof of the identity of the person demanding payment, other than the possession of the bank-book, had not adopted reasonably safe methods of doing business, and did not exercise reasonable care to prevent making a payment to a person not entitled to it. And if a comparison of the signature of the person falsely presenting the book with the genuine one of the depositor on file would have been sufficient to have prevented the fraudulent imposition, then such payment is no defense to an action by the depositor against the bank.

In this case a comparison of the forged signature of Philip S. Ladd upon the back of the check given by the Savings Bank, with the genuine one in the possession of the bank at that time, would have been sufficient, in our opinion, to have aroused the very serious suspicions of the treasurer and would have consequently prevented the payment to the impostor. The payment of this sum by the Savings Bank by giving its check upon a commercial bank does not alter the situation as between the Savings Bank and the depositor, whatever may be, or at any time may have been, the rights of the two banks as between themselves. It was merely an attempt to shift onto the commercial bank the responsibility of passing upon the identity of the payee. We therefore decide that this payment was not made under such circumstances as to relieve the bank from its liability to the plaintiff.

Next, as to the effect of this same regulation, if any, upon the liability of the bank for the amounts paid by the bank upon what purported to be the orders of the plaintiff, but which were in fact forgeries. One of the by-laws printed in the bank-books given to depositors contains this provision in relation to the withdrawal of funds: "Money deposited, may be withdrawn in whole or in part, by the depositor, or by any other person duly authorized, at any time, without notice, when there are funds on hand unappropriated."

So that the contract of the bank was to pay to the depositor in person or to some person duly authorized by the depositor to receive it, and in either case upon presentation of the bank-book. We have already seen that by virtue of this regulation, which we have been considering, the bank is not liable for loss, if the book is lost or stolen, and without notice thereof to the bank, its officers pay a person who falsely personates the depositor, and who presents the book, provided that in making such payment and in having at hand some suitable means for testing the identity of the person so presenting the book, they exercise reasonable care.

But this regulation is limited by its own language to cases where the officers are unable to identify the depositor. It does not purport to apply to the case of a payment made to a person who does not pretend to be the depositor, but who does claim to be duly authorized by the depositor to receive the payment. And there was no other by-law which does affect the question of the bank's liability as to such a payment.

It may be true, that there is as much necessity for some provision in the contract limiting the liability of the bank in the latter case as in the former. The only answer is, that being none the bank made these payments upon its peril as to the genuineness of the orders.

That such a regulation as this does not apply to the case of a payment made to a person who presents apparent authority from the depositor to receive it, but which is in fact a forgery, has always been the decision of the courts whenever the question has arisen, so far as we are aware, and no authority to the contrary has been called to our attention. *Jochumsen* v. *Suffolk Savings Bank*, 3 Allen, 87; *Levy* v. *Franklin Savings Bank*, 117 Mass. 448; *Kimins* v. *Boston Five Cents Savings Bank*, 141 Mass. 33, 55 Am. Rep. 441; *Smith* v. *Brooklyn Savings Bank*, 101 N. Y. 58, 54 Am. Rep. 653.

The question as to whether or not the plaintiff was negligent in not discovering the loss of his book, and notifying the bank thereof before any or all of these payments were made, is not material upon either branch of the case. Even if he was negligent in this respect, his negligence did not excuse the bank officers from the exercise of reasonable care in the adoption of suitable means of preventing such

a mistake, and in making a payment to a person pretending to be the depositor. As to the payments of the second class, we have already seen, that under such a by-law as the one we have considered, the officers of the bank can only make payments to a person duly authorized to receive them by the depositor, and that they must decide upon the genuineness of the authority presented, at their peril. *Brown* v. *Merrimac River Savings Bank,* 67 N. H. 549, 68 Am. St. Rep. 700.

The plaintiff is accordingly entitled to recover the aggregate of these three payments, made to persons unauthorized to receive them, $2,097.17, together with interest to be computed in accordance with the stipulation of the parties in the case.

*Judgment for plaintiff.*