CHARLES E. FIERO, as Committee of the Personal Estate of THOMAS JOHN LANGAN, Plaintiff, *v.* FRANKLIN SAVINGS BANK, Defendant.

City Court of the City of New York, Trial Term, November 10, 1924.

Banks and banking — savings bank — action to recover amount deposited in defendant savings bank by incompetent person — deposit admitted by bank though it claimed account was closed by reason of withdrawals upon drafts purporting to bear depositor's signature — depositor did not appear in person at bank from date of opening of account to date he discovered account was depleted — payment to person not entitled to draw deposit, though presenting passbook, does not discharge bank from liability in absence of exercise of ordinary care and diligence — finding of jury that bank officials did not use ordinary care in protecting depositor's funds by acceptance of drafts not signed by depositor proper — jury not bound by expert evidence as to similarity or dissimilarity of signatures by depositor compared with signatures on drafts — bank charged with knowledge of fact that depositor had been adjudged incompetent — officers of bank bound to exercise diligence in protection of depositor's account, though notation in passbook tends to relieve bank from liability.

Payment made by a savings bank to a person who is not in fact entitled to draw the deposit, though he may have possession of the passbook and present it at the time of payment, will not discharge the bank from liability to a depositor unless it exercises ordinary care and diligence in paying the money to the wrong person. Moreover, a savings bank is liable for having paid a forged draft if the discrepancy between the signatures is so marked and plain that an ordinary, competent clerk exercising reasonable care, should detect the forgery.

Accordingly, defendant's motion for a new trial, in an action to recover the amount deposited in defendant savings bank by a person, subsequently adjudged to be incompetent, and for whom a committee had been named, should be denied and the verdict of the jury, predicated upon a finding that the bank officials did not use ordinary diligence in paying out the depositor's money upon drafts, permitted to remain, where it appears that the bank, while admitting the deposit, claims that the account was closed by reason of withdrawals upon the presentation of drafts purporting to bear the depositor's signature; that from the time the account was opened to the time it was discovered that it was depleted and closed, the depositor never appeared in person at the bank for the purpose of withdrawing any part of said deposit; and that the jury, on submission of the question of the care exercised by the bank in paying out the depositor's funds on the signature appearing on the withdrawal drafts, found that the signature upon the drafts was not the signature of the depositor.

The jury was not bound by the testimony of expert witnesses as to the similarity or dissimilarity of signatures of the depositor compared with the signatures on the withdrawal drafts.

Upon the finding of an inquisition establishing lunacy, and after a committee has been appointed, the world is chargeable with notice of the incompetency of the person so adjudged. Hence, the claim of the bank that it had no information at the time the drafts were presented that the depositor was incapacitated is without force and effect.

Though by-laws of the bank, printed in a passbook, limit the bank's liability to depositors for fraud practiced upon its officers, a duty devolves upon the bank to exercise care and diligence in order that the depositor may be protected from fraud and larceny.

MOTION by defendant under section 549 of the Civil Practice Act to set aside a verdict in favor of the plaintiff and for a new trial.

*Young & Hughes* [*James A. Hughes* of counsel], for the plaintiff.

*Wilson M. Powell* [*Chase Mellen* of counsel], for the defendant.

FINELITE, J.:

The jury found a verdict in favor of the plaintiff. Defendant immediately moved to set it aside upon the grounds enumerated in section 549 of the Civil Practice Act, and for a new trial. It appears from the facts that this action was brought by the plaintiff as committee of the person and estate of Thomas John Langan to recover from defendant the sum of $1,000 and interest thereon, a deposit made by the said Thomas John Langan on the 6th day of October, 1920, in the savings bank of the defendant, which the defendant promised to repay upon demand and in compliance with the by-laws printed in the passbook of the defendant. The defendant admits that such a deposit was made by the said Thomas John Langan, and claims that the account was closed by the withdrawal of the moneys by the presentation of drafts and requests for various payments, and that at the time that said drafts for the payments on account of the withdrawals of said moneys out of said deposit were made that the passbook was presented to the said bank and entries of the moneys paid out were at the time made in said book, and that the defendant used due and reasonable care in the payment of all the drafts and all the moneys deposited in said account, and that on the 23d day of April, 1921, the balance of said account was withdrawn, and in accordance with the by-laws of the said defendant the passbook was delivered to it. It appears further from the evidence that Thomas John Langan at the time that the drafts for the withdrawal of said moneys, purporting to contain the signature of Thomas John Langan, were presented with the passbook a comparison was made with the signature originally made by Thomas John Langan, and they were found to be correct, whereupon said drafts were honored and paid. It appears that at the time that the drafts and passbook were presented to the bank for the payment of said drafts that Thomas John Langan was an incompetent, and about the 17th day of June, 1924, the plaintiff herein was duly appointed committee of the estate of the said incompetent, and that a commission was duly issued to said committee bearing date of June 17, 1924, duly signed by one of the justices of

the Supreme Court of the State of New York, Kings county, and that said committee, the plaintiff herein, filed his bond as such committee. The important question that was presented upon the trial was whether, when said drafts were presented to the bank, with the passbook, the same were presented by a third person, and not during the period of time that the said incompetent was in the city of New York. It appears further that he was incapacitated, being committed to Ward's Island, and there restrained of his liberty, by reason of his actions, being unable to take care of himself on account of his incompetency. It appears further from the evidence that the said incompetent was in the navy during the period of time that he received a shock, which caused him to be incapable of taking care of himself, and upon legal charges made he was committed to the insane ward on Ward's Island as aforesaid, and that at no time did he in person, from the date of the opening of the account down to the withdrawal of the balance of said account, ever appear in person at the bank for the purpose of withdrawing any part of said deposit. The drafts that were presented were compared by the officers of the bank with the signature, as originally made, when the deposit was made and found upon comparison that it was in all respects similar in formation and in spelling as contained upon the original signature card. The plaintiff contends that at no time did the said incompetent present himself at said bank for the withdrawal of said deposit, or any part thereof, and the only time that he appeared was when he was allowed to be on parole for a period of time. He then appeared at the bank accompanied by a sister and made a demand upon the bank for said deposit, whereupon he was informed by the officers of the bank, it having possession of the bank book, that all the moneys deposited of the $1,000 had been theretofore withdrawn on drafts containing his signature, which drafts were presented to him for comparison, and it was testified that he admitted that some were and claimed that some were not his signature. The question now arises whether the bank did use reasonable care and diligence in paying out the money of the incompetent upon the drafts presented, and that question was submitted to the jury, with the evidence that it was not the signature of the incompetent, and on evidence of the officers of the bank, and the ones who had charge of making comparisons of signatures at the bank before a payment of moneys upon the presentation of drafts with the deposit book before any moneys were paid out. Upon making such comparison, as appears from the evidence and the officers of the defendant claiming that it was the signature of the incompetent, and that the drafts were not forged, the question of whether or not the defendant used due and proper care and diligence

in making the comparison and paying out said funds was submitted to the jury. The vouchers were given to them for their examination, and after their deliberation they concluded that it was not the signature of the incompetent, that he did not sign the vouchers or drafts, and that the defendant, through its officers, did not use due and proper care and diligence in paying out the funds to the third party, and the jury found a verdict in favor of the plaintiff for the amount sued for, with interest. The plaintiff throughout the trial contended that the officers of the defendant had failed to exercise the ordinary care and due diligence which it is supposed to exercise under the circumstances of the case. This is no longer a mooted question as to the liability of a savings bank in not using due and proper care and diligence in paying out a depositor's money. The distinction between a savings bank and a discount bank is that a savings bank is bound to exercise only ordinary care in paying out its depositors' funds, and if such care was exercised a depositor cannot recover because his funds were paid out to a stranger. Conversely, the depositor must exercise care in protecting his own rights, and if the negligence of a depositor has enabled an impostor to deceive the bank and to obtain his deposits therefrom the loss must fall on the depositor and not on the bank, although where the bank has been negligent it will not be excused merely by reason of the fact that negligence is also attributable to the owner of the deposit. Such a rule cannot, however, relieve a bank from its obligation to exercise care and diligence to prevent payment to the wrong person. *Kelley* v. *Buffalo Savings Bank* (180 N. Y. 171) was an action by an administratrix of a depositor to recover from the bank certain deposits with interest. The deceased opened the account in 1871, and at the time received a book issued to her in her name, and she signed her name on the signature book kept by the defendant for the purposes of identification. At the time when the account was opened certain rules adopted by the bank were in force which were posted in a conspicuous place in the banking room and also printed in each passbook. One provided that " the secretary will endeavor to prevent frauds, but all payments made to persons producing the deposit books or duplicates thereof, shall be good and valid payments to the depositors respectively." During her lifetime decedent made sixteen deposits to the credit of the account, presented her book to the defendant several times for the purpose of having interest credited thereon and drew two checks upon the account, one in 1873, the other in 1877, which were presented with her passbook, and she received the money thereon. She died in 1878, at which time there remained to her credit a considerable sum, to recover which the action was brought. At the time of her death the bankbook was

in the house where her three sisters and her mother also lived and was taken possession of by her mother or one of her sisters. Subsequently to her death the book was presented to the bank by her mother or one of the sisters for the purpose of having interest credited on ten different occasions between January, 1879, and July, 1883. In March, 1882, the passbook was presented by some person unknown to the defendan who was either the mother or one of the sisters and a deposit of $70 was made and entered in the book. After decedent's death moneys to the credit of the account were paid out by the defendant on five separate drafts drawn in decedent's name, and these moneys were paid to her mother or one of her sisters and not to her legal representatives. The signatures on the five drafts purporting to be the signature of the defendant were not her signature, but were made by her mother or one of her sisters. There was no proof that the officers of the defendant had knowledge of defendant's death. One of the findings of fact made by the court at Trial Term without a jury was to the effect that there did not exist such a disparity or difference between defendant's signature upon the signature book and the several signatures upon the five checks or drafts as to create doubt or misgivings concerning their genuineness in the mind of a competent or reasonably careful bank officer. The complaint was dismissed and the judgment entered thereon was unanimously affirmed by the Appellate Division. The Court of Appeals in reversing the judgment upon the ground that no physical comparison of the signatures upon the five drafts with the decedent's signature in the signature book had been made, the trial court having made a finding to that effect, said that the question to be determined was, " What degree of care must a savings bank exercise in paying money out of a depositor's account after his death, upon the production of his bankbook and the presentation of a draft purporting to bear his signature, when the bank has had no actual notice of the depositor's death, and nothing has transpired to charge it with knowledge of that fact? " After saying that, if it were the duty of savings banks to establish at all hazards the identity of every person presenting a depositor's bankbook and draft it would be impossible for them to continue business, the court said: " Upon reflection it becomes obvious, therefore, that the only practicable general rule to which savings banks can be safely held in such dealings is the rule of ordinary care, leaving it to be applied in the light of the special circumstances that characterize each separate case," and which resulted in the court of final resort reversing the judgment. The officers of defendant claim that it had not received any information at the time that the drafts were presented with the passbook of the incompetent herein that he was incapacitated or

was held in duress by reason of his incompetency; that no such information was given to the defendant, nor was any inquiry made by the officers of the defendant as to the whereabouts of said incompetent, but upon making comparisons of the drafts presented with the signature in the signature book of the incompetent as originally made, when the deposit was first made, and finding it in all respects as they considered it was the signature of the incompetent, the bank thereupon paid out to the one presenting the passbook and the drafts the moneys of the said deposit of the incompetent. That question was also presented to the jury, which resulted in the finding by the jury after due deliberation that the defendant did not use due and ordinary diligence in paying out said incompetent's money upon the drafts when presented. The first information that the bank or its officers had that the said incompetent was deprived of his liberty by reason of his incompetency was when he presented himself with his sister and made a demand for the payment of the deposit, when the bank, after interrogating the sister of the incompetent and the incompetent, discovered then for the first time that during the period of time that the drafts were presented, that he was then incapacitated and was held on Ward's Island as an incompetent. In *Noah* v. *Bowery Savings Bank* (225 N. Y. 284, 288) CRANE, J., writing the opinion, in an action to recover deposits paid to a third party wrongfully in possession of the depositor's bank book, and what care and diligence is required of the bank to ascertain that the person receiving the money is entitled thereto, said: " The rule is well established that the bank cannot rely in making payment solely upon the possession and presentation of the bank book as stated in rule 13 above quoted [of the bank], but must exercise ordinary care and diligence to ascertain that the person receiving the money is entitled to it. ( *Kelley* v. *Buffalo Savings Bank*, 180 N. Y. 171.) \* \* \* The authorities involving the question of payment by savings banks also indicate that the burden of proving care and diligence is upon the defendant pleading it. In *Gearns* v. *Bowery Savings Bank* (135 N. Y. 557, 562) it was said: ' It is well settled, however, that payment made to a person who is not in fact entitled to draw the deposit, though he may have possession of the book and present it at the time of payment, will not discharge the bank, unless it exercised at least ordinary care and diligence in paying the money to the wrong person.' (See, also, *Allen* v. *Williamsburgh Savings Bank*, 69 N. Y. 314; *Kummel* v. *Germania Savings Bank*, 127 N. Y. 488; *Mahon* v. *South Brooklyn Savings Institution*, 175 N. Y. 69, 72.) In the latter case the opinion contains this statement of the rule: ' When through a depositor's carelessness his bank book gets into the hands of a third person

who presents it to the bank, the latter may show its care and diligence in making payment to the person presenting the passbook, and thus protect itself against a second demand for payment by the careless depositor.' " In *Noah* v. *Bank for Savings,* wherein the Trial Term was reversed by the Appellate Division (171 App. Div. 191, 192), SCOTT, J., writing the opinion, stating the law in reference to the payment by savings banks to a wrongful person other than the depositor, says: " The rule as to the liability of savings banks for payments made upon forged drafts is well settled. It is quite different from that which applies to the ordinary banks of deposit which act at their peril and are absolutely liable for payments made upon forged checks, no matter how skillful the forgery may be. In the case of savings banks, however, the rule is that the bank will not be liable for having paid upon a forged draft unless negligence can be imputed to it, that is to say, unless the discrepancy between the signatures is so marked and plain that an ordinary competent clerk, exercising reasonable care, should detect the forgery. (*Campbell* v. *Schenectady Savings Bank,* 114 App. Div. 337; *Kelley* v. *Buffalo Savings Bank,* 180 N. Y. 171; *Appleby* v. *Erie County Savings Bank,* 62 id. 12.) In the case at bar it was satisfactorily shown that in the case of each draft the comparison was made (not always by the same clerk) between the signatures on the draft and the depositor's signature in the signature book. It is perhaps of some significance that although several clerks made the comparisons, they all passed the signatures on the drafts, which do not differ materially from each other, as containing genuine signatures, although to the untrained and inexperienced eye there seems to be considerable difference between the genuine and the forged signatures. It is undoubtedly true, as has been pointed out in several reported cases, and as comports with our general knowledge, that many depositors in savings banks are persons who seldom have occasion to write their names, have never adopted what may be called a standard signature, and whose signatures made on different occasions differ considerably. This is a matter which must necessarily be taken into account by a savings bank clerk in making a comparison of signatures * * *." There is no comprehensive definition covering all cases, but the question whether ordinary or reasonable care has been exercised must depend upon the circumstances in each case in which the question arises. The expressions have been defined over and over again to mean such care as reasonable and prudent men or that ordinarily prudent persons are accustomed to exercise under the same or similar circumstances. Ordinary or reasonable care does not mean the utmost care and diligence or great care or extraor-

dinary care, or a high degree of care. The standard of reasonable care is that of the man of average foresight and prudence, that which an ordinarily careful and prudent person would exercise under similar circumstances; or care according to the usages, habits and ordinary risks of the business or matter in hand. Here we have the question, Did the officers of the bank, after making the comparison with the original signature of the incompetent, use the ordinary care and prudence that a person would use under such circumstances to detect, if possible, any discrepancy that may exist between the signatures of the incompetent upon the withdrawal of drafts with the signature as originally made at the bank? It appears, and plaintiff claims, that there is a discrepancy in reference to the " h " in " Thomas," and " a," " l " and " s " on four of the drafts; so, therefore, this question as to the prudence and care of the officers of the bank in paying out the money o' the said incompetent on the signature on the withdrawal drafts was presented to the jury by the court, and the jury, after their examination, concluded that it was not the signature of the incompetent at the time that the money was withdrawn and the account closed. This was a question of fact which the court could not under any circumstances withhold from the jury, and it was the duty of the court under the proper charge as made, to which no exception was taken, to submit to the jury the question, Did the bank, through its officers, use such precaution as the law requires of it to avoid the depositor being deprived of his money by the presentation of drafts not signed by him or containing a signature similar to his? Both sides had used expert testimony for the purpose of showing dissimilarity and similarity of the signatures of the depositor and the signature on the drafts for comparison. While the rule as to expert testimony has been frequently stated and is well understood, yet its application is sometimes difficult, because of varying facts and circumstances. No such difficulty, however, arises here, yet authorities agree that where the jury can form a proper conclusion after facts known only to experts have been disclosed, it is the jury's province to draw the conclusion. (*Dougherty* v. *Milliken*, 163 N. Y. 527; *Van Wycklen* v. *City of Brooklyn*, 118 id. 424, 429.) This latter case contains a statement of the rule quoted in many of the cases: " While it is no longer a valid objection to the expression of an opinion by a witness, that it is upon the precise question which the jury are to determine." (*Transportation Line* v. *Hope*, 95 U. S. 297; *Bellinger* v. *New York Central R. R.*, 23 N. Y. 42; *Cornish* v. *Farm Builaings Fire Ins. Co.*, 74 id. 295.) Evidence of that character is only allowed when from the nature of the case the facts cannot be stated or described

to the jury in such a manner as to enable them to form an accurate judgment thereon, and no better evidence than such opinions is attainable. Expert evidence must be taken in the same category as ordinary evidence of a layman. It is merely stating one's opinion and must be taken into consideration as facts; but the jury are not bound by expert opinions, as it is merely the opinion of the person giving it what he would do under similar circumstances. The jury may take it into consideration, or they may disregard it and use their own opinion in making comparisons upon such evidence that is presented to them for their guidance, and so decide. We must bear in mind, as appears from the evidence, that at the time of the alleged admissions, on October 19, 1921, Langan had been adjudicated a lunatic, had a duly qualified committee of his person and property acting for him, and that James M. Langan, a brother of the incompetent, was appointed committee of his person and property on July 21, 1921, and was discharged June 8, 1923. The law is settled that a person who has been judicially determined to be incompetent and for whom a committee has been appointed, is incapable of entering into a contract or to have any dealings, and that any contracts he assumes to make are absolutely void. (*Carter* v. *Beckwith*, 128 N. Y. 312.) In this case (at p. 316) the court says: " The court on the finding of an inquisition establishing lunacy, is vested with jurisdiction over the person of the lunatic and assumes the custody and control of his estate, which it manages through the committee appointed in the proceedings, as its bailiff or agent, and although the title of the lunatic to his property is not divested by the proceedings, he can no longer buy or sell, or enter into any contract or dealing binding him or his estate," as " all contracts of a lunatic  *   *   *  made after an inquisition and confirmation thereof, are absolutely void, until by permission of the court he is allowed to assume control of his property.   *   *   *   In such cases the lunacy record, as long as it remains in force, is conclusive evidence of incapacity.   *   *   *   The presumption, whether conclusive or only *prima facie*, extends to all the world and includes all persons, whether they have notice of the inquisition or not." (*Hughes* v. *Jones*, 116 N. Y. 67, 72; *McCarthy* v. *Bowling Green Storage & Van Co.*, 182 App. Div. 18, 21; *Martello* v. *Cagliostro*, 122 Misc. 306.) In the *McCarthy Case* (*supra*) the court stated: " Where a person is, pursuant to law, duly adjudged insane or otherwise incompetent and a committee has been appointed the world is chargeable with notice and every contract thereafter made with him is absolutely void." (*Wadsworth* v. *Sharpsteen*, 8 N. Y. 388; *Carter* v. *Beckwith*, *supra*.) The defendant contends

that the by-laws of the bank are binding upon the depositor, which by-laws read as follows: " This bank shall not be responsible to any depositor, or to his or her heirs or assigns, for any fraud that may be practiced upon any of the officers of this bank, by presenting a depositor's book and drawing money without the knowledge or consent of the depositor, and all entries of moneys paid made in the depositor's book by an officer of this bank shall be deemed good and valid evidence of money paid and shall exonerate it from liability on account of any fraud practiced in drawing the money of any depositor." This by-law with others was printed in said passbook, and was delivered to the depositor herein pursuant to said by-laws and was one of the conditions on which this said account was opened, but it has been held in *Kummel* v. *Germania Sav. Bank* (127 N. Y. 488, 492) that the passbook of a savings bank cannot be regarded as negotiable or its possession proof of a right to draw money thereon, and that it imports a liability of a bank to the depositor of the moneys entered therein, and an agreement to repay at such time and in such manner as he shall direct. Assuming that the by-laws printed in the book are binding upon the depositor and constitute a contract between the parties, we still think that the duty devolves upon the officers of the bank to exercise care and diligence in order that their depositors may be protected from fraud and larceny. It is an unfortunate occurrence that the defendant is obliged to repay this money twice; but, as the question of fact in reference to the payment thereof upon the drafts which did not contain the signature of the depositor, and the question whether due and ordinary diligence had been used by the officers on the payment of said moneys has been submitted to the jury under a proper charge, to which no exception has been taken, and the jury has found in favor of the plaintiff herein, their deliberations should not be disturbed by the trial judge. Motion for a new trial must, therefore, be denied, with an exception to the defendant, with a stay of ten days after notice of entry of judgment. Present order upon one day's notice.

Ordered accordingly; judgment accordingly.