## HARDEE v. GEORGE H. PRICE CO., Inc.
### No. 6631.

United States Court of Appeals for the District of Columbia.

Argued Dec. 7, 1936.

Decided Jan. 25, 1937.

Huston Thompson and Herbert S. Ward, both of Washington, D. C., for appellant.

Foster Wood, of Washington, D. C., for appellee.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, and GRONER, JJ.

GRONER, J.

Appellee is a corporation formerly engaged in business in the District of Columbia as agent of the Commonwealth Casualty Company of Philadelphia for the writing of bonds and casualty insurance. We shall speak of it as "the company." Appellant is the receiver of an insolvent national bank, and we shall speak of him hereafter as "the bank." There was a verdict and judgment for the plaintiff.

On August 7–9, 1930, the company had a balance to its credit in the bank of $1,536.46. On the former date it drew its check for the sum of $1,787.59 payable to Commonwealth Casualty Company. This check was presented for payment August 9th (Saturday) and payment refused. On the 11th (Monday), the check was again presented and again refused because "not sufficient funds according to our books." Protest notices were that same day or early the next day forwarded by the collecting bank to its correspondent bank in Philadelphia and to the payee of the check.

The evidence shows that on August 11th, some time during banking hours, the company delivered to the receiving teller of the bank a deposit aggregating $599.55 made up of checks drawn on sundry banks in the District of Columbia. The deposit slip contained the following printed pro-

vision: "In making deposits the depositor agrees with the Merchants Bank & Trust Co., Washington, D. C., that credit allowed for items on this or any other bank or party is only provisional and until the proceeds thereof, in money, are actually received by this bank or items found good at the close of business of the day on which they are deposited; such items may be charged back to the depositor's account regardless of whether or not the item itself can be returned; that said Bank may decline payment of any check drawn on such deposits until the items of this deposit, though credited, are actually paid in money * * *," etc. The deposit appears to have been made with the request that it be called to the attention of Mr. Donoghue, treasurer of the bank. Donoghue was out when the deposit was made and did not return to his desk until after 3 o'clock. On his return he found the deposit slip with checks attached, and in order to ascertain, in advance of presentation, if the checks making up the deposit were good, telephoned a local bank on which some of the checks were drawn around 3:30 or a quarter of 4 o'clock and was informed that the checks were probably good. Immediately thereafter he telephoned the collecting bank with the purpose of forestalling dishonor of the company's check and was informed that that check was then in the hands of a notary to be protested. He told the collecting bank that he had a deposit and requested that the check be presented the next day for payment, and after this conversation a ledger entry was made in the account of the company with the bank, as an item of uncollected checks.

The only other direct evidence bearing on this feature of the case was that of the witness Mathieson, the notary public who handled the check for protest. He testified that he received the check about 3:30 August 11th and presented it between 3:30 and 4 o'clock to a teller of the bank, who declined payment for the bank on the ground that the books showed that the company had not then provided funds for payment.

The president of the company testified that he received notice of the protest on August 12th (the day following), and went to the bank and had an interview with Donoghue; that together they went to the bookkeeping department and Donoghue examined the account and said, "That check is perfectly good and the account is perfectly good and I cannot understand it"; that Donoghue then telephoned the collecting bank and found out the check was still there and at once sent someone down to the bank with money to pay the check and that subsequently, at the request of witness, Donoghue wrote as treasurer of the bank a letter to the Casualty Company in which he informed that company the check had been returned as the result of an error on the part of the bank. Donoghue contradicted the evidence of the witness in all respects except as to the letter, which he said he had written at the request of the company purely as an accommodation to save it from embarrassment with its principal.

At the close of plaintiff's case and again at the close of all the evidence, a motion was made for a directed verdict and denied. In view of the conclusion we have reached in respect to the error of the court in instructing the jury, and especially in view of the unsatisfactory and fragmentary certificate of the evidence, we think it unnecessary to pass upon this assignment of error.

After the motion was overruled, the bank requested the court to charge the jury in the following words: "The jury are instructed as a matter of law that the contract on the deposit slip is the contract between the depositor and the bank, and if they find from a reasonable preponderance of the evidence that the deposit slip issued by the plaintiff provided that [here follows the language contained on the deposit slip and hereinabove quoted] then the burden is upon the plaintiff to prove by a reasonable preponderance of the evidence the amount of money in the hands of the defendant owing to the plaintiff equalled or exceeded the amount of the plaintiff's check at the time the said check was presented and payment refused, and unless they so find from a reasonable preponderance of the evidence, then their verdict should be for the defendant." This prayer was denied by the court and an exception allowed, and it may be noted in passing that there is nothing in the general charge of the court which directly or indirectly instructs the jury as to the legal effect to be given the language printed on the face of the deposit slip. We think the proposed instruction correctly states the applicable law in that respect and that it was error in the court

to refuse so to instruct the jury. The evidence shows that the company was familiar with the different forms of deposit slips used in the bank and that the deposit in the present instance was made deliberately by the president by the use of the particular deposit form to which we have referred. There is here no claim of a waiver of the conditions of the restrictive provisions, or that there was ever any agreement or understanding concerning the right of the company to draw against uncollected checks deposited as in the present instance, or any custom contrary to the provision. It is true there was evidence that the deposit in question was entered on the books of the bank on the 11th of August (the day of dishonor), but the uncontradicted evidence in this regard is that it was so entered after the close of business that day, and after the telephone conversation between the treasurer of the bank and some official of the collecting bank, and that even when entered it was entered "as an item of uncollected checks."

■ If, therefore, the provision was binding on the company and embraced the terms on which the deposit was accepted by the bank, it was the duty of the court to have so instructed the jury. And we think we can say with complete assurance:

First, that it is the law that when *money* is deposited generally in a bank its ownership passes to the bank and the relation of debtor and creditor is at once created. Dirnfeld v. Savings Bank, 37 App. D.C. 11.

Second, when a bank receives for deposit a check indorsed without restriction and gives credit for it to its depositor as cash in a drawing account so that the depositor may draw against the credit at once, and there are no contrary agreements or understandings, title passes to the bank and the check becomes its absolute property and the relation of debtor and creditor is created. Burton v. United States, 196 U.S. 283, 302, 25 S.Ct. 243, 49 L.Ed. 482; Salem Elevator Works v. Commissioner, 252 Mass. 366, 148 N.E. 220; Cragie v. Hadley, 99 N.Y. 131, 1 N. E. 537; Taft v. Bank, 172 Mass. 363, 52 N.E. 387.

Third, when a check is given to a bank for collection and deposit and the bank receives it—only for collection—the property in the check remains in the depositor and the relation of debtor and creditor does not. exist. Burton v. United

States, supra, 196 U.S. 283, at page 303, 25 S.Ct. 243, 49 L.Ed. 482.

Fourth, upon the deposit by a customer, in a bank, of a check for deposit to his account under an agreement with the bank that the bank will not allow credit for the check until the check is paid in money nor permit the customer to draw against the deposit thus created, the relationship that exists between the bank and the customer is not that of debtor and creditor but of principal and agent—and in these circumstances the entry of the item to the credit of the depositor on the books of the bank does not affect or change this relationship. Salem Elevator Works v. Commissioner, supra; Manufacturers' Bank v. Continental Bank, 148 Mass. 553, 20 N.E. 193, 2 L.R.A. 699, 12 Am.St.Rep. 598.

■ Applying the principles announced above to the facts in this case, we think it clear that the deposit here in question comes within the operation of the fourth rule above and that presumptively the relation between the company and the bank was not that of debtor and creditor but that of principal and agent, and that a different and contrary relationship can be shown only by proof that the bank had either waived the agreement or by long continued custom or practice—or otherwise—had induced the company to believe that it would not be enforced. And, as we have seen, the evidence fails to do either. In this view we hold that the company, in advisedly using the deposit slip containing the printed rules with relation to the terms upon which the bank would accept the deposit, must be deemed to have acquiesced therein, and that the printed provisions were prima facie the contract between the company and the bank.

■ This holding is in line with the great weight of authority in this country. Indeed, most of the cases go to the point of saying that, if a writing in a standard form, for instance a railroad ticket, telegraph message, or bill of lading, is delivered by one of two contracting parties to the other and accepted without objection, it is binding upon the latter whether he informs himself of its contents or not. And the same rule has been applied in nearly all the states in which the question has arisen in the case of rules printed in bank pass-books and on deposit slips. See Burrill v. Dollar Savings Bank, 92 Pa. 134, 37 Am.Rep. 669; Bulakowski v.

**500**

Savings Bank, 270 Pa. 538, 113 A. 553; Semingson v. Bank, 162 Minn. 424, 203 N.W. 412; Macon Grocery Co. v. Bank, 42 Ga.App. 74, 155 S.E. 57; Salem Elevator Works v. Commissioner (Mass.), supra; Chase v. Waterbury Bank, 77 Conn. 295, 59 A. 37, 69 L.R.A. 329, 1 Ann. Cas. 96; Ladd v. Augusta Bank, 96 Me. 510, 52 A. 1012, 58 L.R.A. 288; Heath. v. Bank, 46 N.H. 78, 88 Am.Dec. 194; Cosgrove v. Provident Inst., 64 N.J.Law, 653, 46 A. 617; Schoenwald v. Bank, 57 N.Y. 418; Gifford v. Rutland Bank, 63 Vt. 108, 21 A. 340, 11 L.R.A. 794, 25 Am.St.Rep. 744; Wegner v. Bank, 76 Wis. 242, 44 N.W. 1096.

In the instant case, as we have shown, the evidence is that there were several forms of deposit slips, with all of which the company was familiar, but notwithstanding this the deposit in question was made on the form containing the printed matter set out above. One of the conditions in this printed form is that the depositor may not withdraw the amount of the deposit until the bank has received payment in money. By using this form, the company assented to this provision.

In these circumstances it was the duty of the court to have instructed the jury, as requested by the defendant; and, because the court refused to do so, the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.