## WATTS v. AMERICAN SECURITY & TRUST CO.

### No. 374.

Municipal Court of Appeals for the
District of Columbia.
May 22, 1946.

P. Michael Cook, of Washington, D. C.,
for appellant.

Bernard J. Gallagher, of Washington,
D. C. (George A. Cassidy, Jr., of Washing-
ton, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and
HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant had a $1,000 savings account
with appellee bank. His stepson, who lived
with him, and two young friends, took the
savings pass book; one of the friends
forged the depositor's name to a with-
drawal slip; and the three of them pre-
sented the pass book and forged with-
drawal slip to the bank and withdrew $900
from the account. The depositor sued the
bank, and upon judgment being awarded
against him, brought this appeal.

Two questions are presented: the ef-
fect of certain regulations printed in the
pass book; and whether a finding by the
trial court, sitting without a jury, that the
bank exercised reasonable care is support-
ed by substantial evidence.

The relevant part of the Rules and Reg-
ulations printed in the pass book follows:

"Every person depositing shall be fur-
nished with a book in which the deposits
and payments shall be entered as soon as

made. *This book must be presented to the Company whenever a deposit is made or money withdrawn,* that the transaction may be regularly entered therein. Possession of the book of deposit shall be sufficient evidence of ownership thereof to authorize the payment of money, due thereon. The Company will endeavor to prevent fraud on its depositors, yet all payments made by the Company to any person producing the book shall be valid as against the depositor and a full, effectual release thereof to the Company."

■ The general rule has been approved in this jurisdiction that where a depositor advisedly uses a deposit slip or pass book containing rules with relation to the terms upon which the bank would accept the deposit, he is deemed to have acquiesced therein, and that the provisions are prima facie the contract between the parties.[1]

■ The appellate courts of the District of Columbia, however, have not had occasion to pass upon the application of this rule to a withdrawal from a savings account on a forged withdrawal slip accompanied by a pass book containing such rules and regulations. The better reasoned decisions in other jurisdictions applying to savings deposits hold that such rules and regulations do not under all circumstances constitute a full release of the bank, but that the bank is bound to exercise ordinary care, or due diligence, in paying out savings deposits, and that what constitutes ordinary care, or due diligence, depends upon the circumstances of each case and is to be determined by the trier of the facts.[2] While this rule was originally adopted in favor of savings banks, which were mutual in character,[3] it has also been followed with respect to withdrawals from the savings departments of national and commercial banks where similar pass book rules and regulations were in effect.[4] We conclude that the same rule should be applied here.

The depositor, practically conceding this proposition, nevertheless contends that the trial court was wrong in finding that the bank exercised reasonable care. This makes it necessary that we examine the evidence. Briefly stated, it was as follows: Plaintiff was a roofer by trade and an officer of his local union. He kept in a brief case at his home various notices bearing his signature. Three or four months previously he had opened this savings account and had signed a signature card. He had visited the bank only three times and then to make deposits. He kept his pass book in a pocket of a suit, which was hung in a cupboard of his home. He last saw it on a Wednesday preceding the Saturday night he discovered its loss. He reported the loss of the book to the bank early Monday morning and learned that $900 had been withdrawn on the preceding Friday.

Plaintiff's stepson (who at the time of the trial was "doing time" for participating in the forgery) testified at the trial. According to him, one of his friends took the bank book from his stepfather's coat pocket, obtained a withdrawal slip from the bank, forged the signature by tracing a signature from one of the notices taken from the brief case, and presented the pass book and slip at the bank and withdrew $900. The stepson and another young man were also at the bank at the time.

In behalf of the bank, the testimony showed that the teller who handled the transaction had been so employed for six months prior to the withdrawal; that two young men were together at the time; that one of them said something about just having gotten out of the Army and wanting to withdraw some money to have a good time; that the teller checked the signature

[1] Hardee v. George H. Price Co., 67 App.D.C. 25, 89 F.2d 497; Gibson v. Industrial Bank of Washington, D.C. Mun.App., 36 A.2d 62.

[2] Chase v. Waterbury Sav. Bank, 77 Conn. 295, 59 A. 37, 69 L.R.A. 329, 1 Ann.Cas. 96; Ladd v. Augusta Sav. Bank, 96 Me. 510, 52 A. 1012, 58 L.R.A. 288; Commonwealth Bank of Baltimore v. Goodman, 128 Md. 452, 97 A. 1005; Cosgrove v. Provident Inst. for Savings, 64 N.J.L. 653, 46 A. 617; Kelley v. Buffalo Sav. Bank, 180 N.Y. 171, 72 N.E. 995, 69 L.R.A. 317, 105 Am.St.Rep. 720.

[3] Bulakowski v. Philadelphia Sav. Fund Soc., 270 Pa. 538, 113 A. 553.

[4] Fourth and Central Trust Co. v. Rowe, 122 Ohio St. 1, 170 N.E. 439; Tribulas v. Continental Equitable Title and Trust Co., 331 Pa. 283, 200 A. 659; Zuplkoff v. Charleston National Bank, 77 W.Va. 621, 88 S.E. 116.

with the signature card, entered the withdrawal in the pass book and paid out the money. The teller recalled that the young men appeared between 20 and 22 years old and "looked like they worked"; that he did not recall having seen plaintiff before the withdrawal.

The depositor relies strongly on the fact that the signature card also contains the date of his birth, showing him to have been about 40 years old, and urges that ordinary care would have required the teller to note the discrepancies in age and thus become suspicious; that the remark about just getting out of the Army was suspicious in view of the newness of the account.

The questioned withdrawal slip was placed in evidence, together with other samples of the depositor's actual signature. All concerned agreed that the forged signature compared very favorably with the depositor's actual signature, and that there was nothing about the signature itself to arouse suspicion.

■ Appellee has approximately 55,000 savings depositors. Evidence was introduced showing that in the larger banks in Washington it is the custom to allow tellers to pay out any amounts from savings accounts when the pass book is presented and when there is nothing about the signature on the withdrawal slip to arouse suspicion. While such a custom could not alter the legal responsibility of the bank, the evidence was admissible as bearing on the question of what would constitute ordinary care.

■ The case presents an obvious hardship on the depositor faced with the loss of $900 of his savings account.[5] Nevertheless, we would not be justified in holding that the finding of the trial judge that the bank exercised reasonable care was plainly wrong or was not supported by substantial evidence. While under somewhat analogous facts juries have found for the depositor, yet it has been uniformly held that the question of negligence is one for the jury.[6] We may not substitute our judgment on the evidence for that of the trier of the facts.

Appellee has urged the alleged negligence of the depositor (based largely upon his knowledge of the previous bad record of the stepson) as an additional reason why he should not recover. The trial court, however, made no finding on this point, and in view of our conclusion it is unnecessary that we discuss it.

The judgment of the court below is affirmed.

Affirmed.

[5] The evidence shows that at least a large part of the proceeds were dissipated by the stepson and his friends, and it is presumed, therefore, that they are not recoverable.

[6] Chase v. Waterbury Sav. Bank, supra; Ladd v. Augusta Sav. Bank, supra; Kummel v. Germania Sav. Bank, 127 N. Y. 488, 28 N.E. 398, 13 L.R.A. 786; Fiero v. Franklin Sav. Bank, 124 Misc. 38, 207 N.Y.S. 235; Tobin v. Manhattan Sav. Inst., 6 Misc. 110, 26 N.Y.S. 14; Wegner v. Second Ward Sav. Bank, 76 Wis. 242, 44 N.W. 1096.