Murray H. Pbarlmau, J.
The trial of the above-entitled, action was commenced on October 8, 1958 and thereafter continued on various dates, namely, to October 10, 1958, October 15,1958'and October 20,1958 and finally concluded on November 17, 1958.
This is an action to recover from the defendant the Bank for Savings the sum of $2,800 paid to one Felix Bloom, the father of the infant, when he presented the passbook and two forged *695 orders for $1,400 each at the Bank for Savings on the 25th and 26th days of April, 1957.
The account in question was opened by Shirley Bloom, mother of the infant, on November 20, 1956, after she had explained to an officer of the defendant bank that the money to be deposited belonged to the infant plaintiff and was to come from his grandmother who wanted to leave the money to him. This conversation was not denied and I find as a question of fact that it took place. The bank officer then told Mrs. Bloom to open up the account in her name in trust for the boy. Almost all of the funds that eventually came into the deposit consisted of a check received by the grandmother in an accident case, and was indorsed over to Mrs. Bloom and deposited in the account.
Mrs. Bloom lived in a four-room apartment at 2104 Catón Avenue, Brooklyn, New York. The apartment consisted of four rooms, namely, a kitchen, a living room and two bedrooms. Mrs. Bloom and her husband and son occupied one bedroom and the remaining bedroom was occupied by her father and mother. In view of the fact that her husband was a convicted forger Mrs. Bloom kept the passbook in question and another passbook in a bureau in her parents’ bedroom. She had two other passbooks which she kept in a bureau of her own room because the accounts were small and most of the money had come from her husband so that she was not particularly concerned if her husband would attempt to make off with those two other passbooks. Inasmuch as the mother was bedridden and was being attended by a nurse, Mrs. Bloom placed the books for safekeeping in the bureau drawer located in her father’s and mother’s room. I find as a fact that there was no contributory negligence on her part that enabled her husband to obtain the book and deceive the bank. In passing, I note that Judge Finelite in Fiero v. Franklin Sav. Bank, (124 Misc. 38, 41) held that the negligence of the depositor did not ‘ ‘ relieve the bank from its obligation to exercise care and diligence to prevent payment to the wrong person ”. However, in this case I have factually found that there was no negligence on the part of Mrs. Bloom.
Mrs. Bloom discovered on the morning of April 29, 1957 that the passbook in this case was missing. She rushed to the defendant bank and ascertained that two withdrawals had already been made along with a deposited check that did not clear. Each withdrawal slip was made payable to F. Bloom or bearer and signed allegedly Shirley Bloom.
A Mr. Paul Cheney, employed by the Indemnity Insurance Company of North America which was on the bond for the *696 bank, „ was present in the bank at the time. Mrs. Bloom was referred to him and he promised to make good her money, if she would prosecute the forger. She took such steps but never received the money.
The two withdrawal slips were signed by signatures that were obviously not that of Shirley Bloom. After hearing the defense and observing the witnesses presented by the defendant, there is no doubt in my mind as to the negligence of the bank.
The first witness was Katherine C. Kassavian, who testified she was the assistant head teller in defendant’s bank. Mr. Bloom presented her with a withdrawal slip dated April 25, 1957, which read “ Pay to F. Bloom or bearer ”. Because he refused a check she referred the matter to an officer of the bank, as her limit of authority to pay cash was $500. She claimed that she and an officer, who was not produced, checked the signature with the ledger and signature cards and found the signature authentic. She admitted that they did not get many transactions of this kind, not more than 25 a year as a rule. She testified that she customarily would ask for identification such as a driver’s license or draftee’s card. Testimony showed that Mr. Bloom had neither of these. She however testified that she did not know what identification the man had. As a matter of fact she actually claimed that she had no personal knowledge of the transaction. In view of the fact that the signatures were not identical, and a male having presented the draft, and having refused to take a check, and there being no satisfactory proof as to how the man was identified, I am convinced that the defendant was guilty of negligence in making this payment on April 25, 1957.
The next withdrawal on April 26, 1957, requires but little discussion. The book and the forged draft were presented to Winifred Caraher, a teller whose limitation to pay cash was $1,000. Again a check was refused and she referred the transaction to Katherine C. Kassavian, the assistant head teller, because her authority, as stated before, was limited to $1,000. No explanation was offered why she referred this transaction to Miss Kassavian who for some unknown reason had only half the authority to pay cash that Mrs. Caraher had. The negligence of the bank in connection with this transaction is obvious. Furthermore, Fmi1 H. Karcher, the defendant’s assistant controller, testified that each withdrawal herein “ is a rare kind of transaction”. He frankly admitted that he would not pay more than $100 on an identification of a driver’s license and he would have made a telephone call for verification, all of *697 which gives a clean insight as to just how negligent the employees of the bank were on both of these transactions.
I have taken the testimony of George F. Cody, and Paul N. Cheney and find their testimony to be of no value.
The rule has long been settled that a bank in making payment cannot rely solely upon the possession and presentation of the bankbook or passbook. It must exercise ordinary care and diligence to ascertain that the person receiving the money is entitled to it (Kelley v. Buffalo Sav. Bank, 180 N. Y. 171; Gearns v. Bowery Sav. Bank, 135 N. Y. 557; Kummel v. Germania Sav. Bank, 127 N. Y. 488; Gerardi v. New York Sav. Bank, 58 Misc. 183). I find that no such care was exercised herein. In the instant case which makes it stronger, the bank was informed in advance that the money belonged to the infant plaintiff, and the male applied for the withdrawal, and not the female who made the deposit. Greater attention should have been paid to this “ rare kind of transaction ” and this situation comes directly under the authority of Ficken v. Emigrants’ Ind. Sav. Bank (33 Misc. 92).
An additional defense has been raised that the plaintiff is not the real party in interest as title to the account was in the name of Shirley Bloom in trust for the infant and that she alone could bring the action. Defendant has cited Matter of Totten (179 N. Y. 112) as its authority. In Matter of Totten, the opinion of Vann, J., contained the following at pages 125-126a deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor.” (Emphasis mine.)
Here the proof is clear and I make a finding of fact that the moneys deposited belong to the infant plaintiff and not to Shirley Bloom, and were a gift to him from his grandmother. Therefore the Totten case does not apply at all.
In the case of Hodgins v. Zabel (7 Misc 2d 484) plaintiff sued his daughter to obtain the contents of a bank account. The account was in the name of the daughter in trust for the father. The opinion of Boneparth, J., contained the following (p. 485): “The form of the deposit is not conclusive, both parties named in the account being still alive. And as between the persons named in the deposits, any presumption arising from the form of the deposit or account may be overcome by proof, as to the true nature of the transaction. (Matter of Porianda, 256 N. Y. 423, 425; Matter of Bolin, 136 N. Y. 177, 180; Moskowits v. Marrow, 251 N. Y. 380, 397; Morris v. Sheehan, 234 N. Y. 366.) ”
*698 In the instant case the undisputed proof was that the bank official who opened the account knew that the moneys belonged to the infant plaintiff and if he opened the wrong kind of an account, the bank alone was at fault and is estopped from denying that the title to the account was in the infant plaintiff. As was recently said by our Court of Appeals, “An estoppel * * * ‘ rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.’” (Triple Cities Constr. Co. v. Maryland Cas. Co., 4 N Y 2d 443, 448.) There is overwhelming proof that the plaintiff is entitled to judgment.
Accordingly, I direct judgment for the infant plaintiff in the sum of $2,800, together with interest and costs from the 29th day of April, 1957.