Robinson, J.
 

 This case may be disposed of upon the single question whether the paper writing delivered by the attending physician to Joseph O’Brien, the brother of the decedent, without direction from the decedent, and his retention of it, without delivery to the defendant in error during the life of the decedent, together with the oral testimony that decedent used the words “and I give to mamma all the money I have in banks,” invested the donee with dominion and divested the
 
 *206
 
 donor of dominion. If so, the question of intent was one of fact, and this court will be governed by the determination of that fact by the jury and the courts below. If, on the other hand, the record fails to disclose any evidence or any reasonable inference which may be drawn from evidence tending to prove the essential element of delivery to the donee, actual or symbolical, then the trial court erred in not sustaining the motion and directing a verdict for the plaintiff in error.
 

 Counsel for the defendant in error apparently were in doubt whether the alleged gift in this case was a gift
 
 inter vivos
 
 or
 
 causa mortis,
 
 and tried the case apparently without determining which.
 

 The essentials of a gift
 
 inter vivos
 
 are the purpose of the donor to make the gift and a delivery of the thing given, which delivery may be actual, constructive, or symbolical
 
 •
 
 it is immaterial which, so long as it divests the donor of all dominion and invests the donee with dominion.
 

 A gift
 
 causa mortis
 
 is a gift made by a person in expectation of death, and upon condition that the donor dies as anticipated. The essentials of the gift are the same, the distinguishing features being that a gift
 
 causa mortis
 
 is recoverable during the life of the donor and a gift
 
 inter vivos
 
 is irrevocable.
 

 The intention of the donor to make the gift, whether
 
 inter vivos
 
 or
 
 causa mortis,
 
 while essential, is not the all-controlling feature in determining whether an act or acts constitute a gift.
 

 It is apparent from the record, giving to the paper writing and the evidence such credence as the jury were entitled to give to it, that it was the
 
 *207
 
 intention of Lonis Y. O’Brien to give to his mother such moneys as he had in banks. That the attempted gift was
 
 causa mortis
 
 rather than a gift
 
 inter vivos
 
 would seem to appear from the evidence of Mrs. Baker that the attending physician at the time of presenting the paper writing to Louis Y. O’Brien stated, “I have a paper here, in case of your not getting better, there is a paper I would like to read to you,” and from the fact that subsequent to its signing Louis Y. O’Brien executed a blank bank check, intending the check to be filled out in such a way as to operate upon a part of these funds in payment of his hospital and physician bills, and by the fact that he gave directions as to the disposition of a part of the fund. This evidence is also pertinent in determining the intention of the decedent with reference to his dominion over the thing alleged to have been given. The record, however, containing evidence as to intention, that question would very properly be one for the determination of the jury had there been any evidence tending to prove the other elements of a gift, either
 
 causa mortis
 
 or
 
 inter vivos.
 

 That it is not necessary for a donor, situated as was the decedent in this case, to do an impossible thing, viz., manually deliver to the donee the funds, which were in banks in a different state, is well settled. It is equally well settled, however, that some sort of possession must be delivered to the donee, actual or constructive, which possession must be taken by the donee and retained until the death of the donor. While such delivery need not necessarily be made to the donee personally, if not so made, it must be made to an agent or
 
 *208
 
 trustee of the donee, as such, the appointment of whom may he made by the donor.
 

 Was there any evidence in this case tending to prove a constructive delivery to the defendant in error? It must be conceded that no such delivery was made to .her in person, although she was present and such delivery could have been made to her as readily as to any other person.
 

 The evidence upon this subject is:
 

 “He [Louis Y. O’Brien] signed it and the doctor gave it to me [Joseph Arthur O’Brien].
 

 “Q. What did you do with it? A. Put it in my pocket?
 

 “Q. What was done with it afterwards? A. Afterwards ?
 

 “Q. Yes. A. You mean after I came to Toledo?
 

 “Q. Yes. A. I showed it to his wife.”
 

 There is not a syllable of evidence tending to show any direction or instruction given to the doctor with reference to the disposition of the jiaper, or any direction or instruction given to Joseph in the presence or absence of the decedent with reference to the disposition of the paper, or any evidence tending to show any delivery of the paper by Joseph O’Brien to the defendant in error in the presence of the donor, or with the knowledge or consent of the donor, or any delivery at all to the defendant in error, until long after the death of the donor. On the contrary the circumstance of the donor thereafter drawing a blank check upon the fund, and thereafter giving direction to the defendant in error Mary 0 ’Brien to give a portion of the fund to Joseph O’Brien, tends to indicate that it was within the mind of
 
 *209
 
 the donor that he retained dominion over the fund, and that the transaction was in the nature of a testamentary disposition of his property.
 

 The question which this court is deciding is whether the delivery of the paper writing to Joseph, in connection with the words used and things done, amounted to a delivery of the “money in banks” to the defendant in error. The question whether the paper writing itself amounts to a testamentary bequest is not before the court. •
 

 This court has repeatedly held that proof of the intention of a decedent to make a gift, either
 
 inter vivos
 
 or
 
 causa mortis,
 
 is not of itself sufficient to sustain such gift.
 

 In the case of
 
 Simmons
 
 v.
 
 Cincinnati Savings Soc.,
 
 31 Ohio St., 457, 27 Am. Rep., 521, this court declared:
 

 “The drawer of a check delivered it to the payee, intending thereby to give to the payee the fund on which the check was drawn. Held: That until the cheek was either paid or accepted, the gift was incomplete, and that, in the absence of such' payment or acceptance, the death of the drawer operated, as against the payee, as a revocation of the check.”
 

 The court in that case found the intent, but refused to sustain it as a gift.
 

 In the case of
 
 Gano
 
 v.
 
 Fish,
 
 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819, this court declared :
 

 “Gifts
 
 causa mortis
 
 have the nature of a legacy, and the policy of our law does not favor them while there is provision, by the statute of wills and the law of descents, for the transmission of all property rights.”
 

 
 *210
 
 In that case the decedent stated to his daughter:
 

 “My notes are in a little box on the bureau there; I want you to take them and divide them equally among’ you children.”
 

 He directed her to get the key to the box, which she did, and tried it in the box, and then delivered it to her husband for safe-keeping. After the death of the intestate she took the box and did not divide the notes, but turned them over to the administrator and brought an action against the administrator to recover them:
 

 “Held: 1. These facts do. not show such a delivery as constitutes a valid gift
 
 causa mortis
 

 In the case of
 
 Flanders
 
 v.
 
 Blandy,
 
 45 Ohio St., 108, 12 N. E., 321, the father set apart certain bonds to his daughter, which were left in the possession of the father by the daughter, at her request, for safe-keeping, and the father collected the interest upon them and transmitted it to her up to a certain date, when, without her knowledge or consent, he invested the bonds in a business in which he had become interested. He then wrote his daughter a letter which he stamped as a contract, in which he promised if she did not elect to accept the investment in lieu of the bonds he would retain it himself and pay her $2,000, with interest, which written promise the daughter accepted. Upon the death of her father she broug’ht an action on the written promise against his representative, to recover the $2,000 and interest. Held:
 

 “1. That there was no good and sufficient consideration to support the promise on which the suit was brought.
 

 
 *211
 

 “2.
 
 That the transaction between the father and daughter was not a valid gift
 
 inter vivos.”
 

 The possession of the father as custodian, for safe-keeping, the collection and payment of the interest on the bonds to the daughter, and the written letter stamped as a contract, acknowledging the ownership of the bonds in the daughter, and offering her the election to accept in lieu of the bonds the business in which he had invested the bonds without her knowledge, or to take their value in money, and her election to take their value in money, while clearly showing the intent, were held not sufficient to complete the gift.
 

 In the case of
 
 Hamor
 
 v.
 
 Moore’s Adm’rs.,
 
 8 Ohio St., 239, Moore executed to Mrs. Hamor a paper writing in the following words:
 

 “For value received, I promise to pay to Mrs. Hamor, wife of John Hamor, the sum of $300, as a small recompense for the kindness shown to me by her. The executors of my last will and testament are hereby directed to pay the above to Mrs. H., or her sons, Moses and John, after my decease. John E. Moore.
 

 “Attest: Philip Eiggs.
 

 “February 28, 1850.”
 

 He then delivered the same to Philip Eiggs with instructions to deliver it to Mrs. Hamor after his death, which was done. Held:
 

 “That this was not-a gift
 
 inter vivos,
 
 nor a gift
 
 causa mortis-,
 
 nor was it good as a testamentary disposition.”
 

 In 12 Euling Case Law, 946, Section 23, it is stated:
 

 “To effect a gift of money on deposit, whatever
 
 *212
 
 is sufficient to place the fund under the donee’s control, so that nothing further is necessary on the part of the donor to give possession, is enough. As in the case of other property, to pass money on deposit by gift, there must be a delivery to and acceptance by the donee or something equivalent thereto. It is not necessary that there should be a manual delivery of the thing given, that is, the money; nor is there any particular form or mode in which the transfer must be made. The gift may be perfected when the donor places in the hands of the donee the means of obtaining possession of the contemplated gift, accompanied with acts and declarations showing an intention to give, and to divest himself of all dominion over the property.”
 

 Measured by the above the donor in the instant case neither placed in the hands of the donee the means of obtaining possession of the money nor divested himself of all dominion over it. The most that can be said of the paper writing, considered in connection with the words spoken by decedent, is that the donor was attempting to make a testamentary disposition of a portion of his property.
 

 It is of course not necessary that actual manual transfer of the thing given be made, where, by reason of the situation of the parties, or the nature of the thing given, such manual delivery cannot be made, but it is essential that such symbolic delivery be made as is consistent with the situation of the parties and the character of the thing attempted to be given.
 

 ' The record in this case does not disclose where the bank book, the key to the vault, or the other
 
 *213
 
 evidences of ownership of the donor were at the time of the execution of the paper writing. While the delivery of the paper writing by the attending physician to Joseph in the presence of the decedent might well support an inference that such delivery to Joseph was authorized by the donor, it does not support an inference that Joseph, who made no delivery to the defendant in error during the life of the donor, was made by the donor an agent or trustee of the donor to deliver to the defendant in error, or made an agent and trustee of the defendant in error to receive such delivery; nor, if he was an agent or trustee of defendant in error by her appointment, that the donor had any knowledge of such agency or trusteeship. The most that can be said for the evidence touching the question of delivery, giving to it the most favorable interpretation towards the defendant in error of which it is susceptible, is that the decedent, by reason of his permitting the attending physician to deliver the paper writing to Joseph, by his silence authorized the delivery to Joseph. The explanation of Joseph that he placed it in his pocket and retained it for safe-keeping tends to prove his purpose in that respect, but does not tend to prove the purpose of the donor in any respect.
 

 The evidence in this case, however, while showing an intention on the part of the decedent to give to Mary O’Brien his money in banks, in no respect tends to show any delivery, actual or symbolical, of the thing given to the donee, or to any person authorized by the donor to receive it for her, or to any person authorized by'.the
 
 *214
 
 donee to receive it, of which authorization the donor had any knowledge.
 

 The motion, therefore, for a directed verdict, should have been sustained.
 

 The judgment will be reversed and the judgment which the court of common pleas should have rendered will be entered.
 

 Judgment reversed, and judgment for plaintiff in error.
 

 Marshall, C. J., Jones, Matthias, Day and Allen, JJ., concur.
 

 Kinkade, J., not participating.