SCHMITT, ADMX., *v.* SCHMITT.

(Decided November 12, 1928.)

*Messrs. Gordon & Gordon,* for plaintiff in error.
*Messrs. Kees, Marvin & Godfrie,* for defendant in error.

VICKERY, J.   This cause comes into this court on a petition in error to the common pleas court of Cuyahoga county, the purpose being to reverse the judgment of that court in favor of the defendant in error, Barbara Schmitt, against plaintiff in error, Pauline Schmitt, administratrix of the estate of John Schmitt, deceased.   It seems from the record, which is very meager, that one John Schmitt, having accumulated certain property, apparently had married a woman, to wit, Pauline Schmitt, and the marriage evidently was not made in heaven, for shortly after the relation was entered into the contracting parties unhappily fell out, and it is rather difficult to learn whether John Schmitt abandoned Pauline or whether Pauline abandoned John, but anyhow

they lived together only a short while. John Schmitt was a carpenter and had a daughter, Barbara Schmitt, defendant in error here. He likewise had two nephews, and apparently having in mind the unhappy relations between himself and his wife Pauline, he set his wits to working as to whether or not he could devise some way in which to deprive her of what the law would allow her as his widow in case of his death. Neither party sought or obtained a divorce. Subsequently John Schmitt lived with his daughter Barbara, the defendant in error in this action, and probably she looked after his welfare. Apparently, prior to this time, he had given her, by transferring it over to her by gift *inter vivos*, about three thousand six hundred dollars, which she afterwards invested in a home, although it apparently was taken in the name of another, and this probably was because of some domestic difficulties in Barbara's family life, she having ultimately obtained a divorce from her husband, a man by the name of Clark. However that may be, that question is not involved in this lawsuit, but thereafter Schmitt having deposited in a bank, to wit, the South Side Savings & Loan Association, the sum of $292.60, or it amounted to that at his death from the accumulations of interest, he made this into a joint account with his nephew Louis Schmitt, and the card is here in evidence which authorized either John Schmitt or Louis Schmitt to draw this amount. The card says either during life or after death. I will revert to this question again. After John Schmitt died, within the next day or two, apparently without any demand on the part of Barbara, Louis Schmitt assigned this ac-

count to Barbara and authorized Barbara to draw the money, which she did some time thereafter, and Louis Schmitt took a receipt from Barbara for the amount of money that he had paid her.

John Schmitt had another account in that same bank, to wit, the South Side Savings and Loan Association, of $1,080.63, and, by a card which is in court as part of the evidence, he made that a joint account for himself and a nephew Edmund Schmitt, and the card at least authorized either of them to draw any or all of this account during the lifetime of John Schmitt, and the survivor to draw the entire amount upon the death of either. Within a day or two after John Schmitt's death, apparently without any demand on the part of Barbara, Edmund Schmitt likewise assigned and transferred this account to Barbara Schmitt, which she later withdrew and placed in another bank. This she also subsequently withdrew, and she now claims that it is in a safety deposit box of the bank together with the sum which she withdrew from the joint account of Louis and her father, after the latter's death.

When Pauline learned of the death of Schmitt, she went to the probate court and was appointed administratrix of the estate, she being the widow and entitled to administration under the laws of Ohio. She then brought proceedings against Barbara, claiming that there had been a concealing of assets belonging to the estate, and it is admitted that the daughter had taken certain things, such as carpenter tools, a watch, and other articles, and the controversy over them is out of the case as it was adjusted by agreement, and the court found that she had sold an overcoat of the father and had in

her possession five dollars from the sale, and ordered that turned over, but apparently held that these two accounts above referred to had been transferred to the nephews, and therefore were not assets of the estate.

We have examined this record, and, as already stated, it is very meager, and would have been more illuminating if the parties who sought to get at these assets had been less technical about their objections. Once the daughter Barbara was about to tell what her father told her, when counsel representing the administratrix objected, and so we did not get exactly what the father told; and Louis and Barbara Schmitt were also upon the witness stand. The rest of the evidence is simply the showing of the accounts and various matters connected therewith.

It is claimed in this case that Louis was somewhat displeased because he expected something from his uncle; something from the estate. The effect of this seems to have been lost upon the counsel who prepared the case. Now it is claimed by the daughter Barbara, defendant in error, and it must have been so decided by his honor in the court below, that this case comes within the rule laid down in the case of *Cleveland Trust Company* v. *Scobie*, 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182, to the effect that a joint account payable to either or both, or any or all, either before or after death, transfers the title to the survivor after death. Now we agree that that is the law laid down in the *Scobie case*, but it will be noticed that in the *Scobie case* the Supreme Court held that that was so where the transaction was intended to be a transfer of a present interest in that property to the joint depositor, and in the

*Scobie case* the sister of Jerome Green, the man who had the money in the bank, had a vested interest in that account from the start, and she could have drawn all of that money at any time during the lifetime of Jerome Green, so the intention of the party who had the money in the bank must have been clear to have given a present ownership of the money in the bank to the survivor, whoever that might be, and that would transfer a vested interest even though the power to revoke remained in the party who put the money in the bank; in the *Scobie case,* Jerome Green.

Now in the instant case Louis Schmitt was upon the witness stand and he claimed only to have had the right to draw this money *after* the death of John Schmitt. Edmund Schmitt did not testify and presumably the same thing was true as to him. The daughter Barbara who got this money testified clearly and unequivocally that this money was her father's upon his death, and apparently Louis and Edmund each turned the amount that he had drawn over to her in pursuance of some understanding and agreement between the father and themselves of which Barbara had cognizance, for if it had not been for objection to the answer of Barbara she would have said undoubtedly that her father told her of the arrangement; but actions speak louder than words, and if Louis was disgruntled because his uncle did not give him anything, and this money was his by virtue of this joint account in the bank, he surely would not voluntarily have turned it over to his cousin. Inasmuch as he did it voluntarily without any apparent demand on the part of Barbara, it shows there must have been an understanding and agreement between him and John Schmitt

that he was simply to hold this property for the purpose of being the conduit through which it might be gotten into Barbara's hands, and that undoubtedly was John Schmitt's purpose, to prevent the widow Pauline from claiming her widow's share in this property. In other words, this record does not show affirmatively that there was any intention of John Schmitt to part with title to this property during his lifetime, or to any part of it; nor does it show that Louis or Edmund should have any title to it either during his lifetime or thereafter; they were simply conduits, the means through which this property was to ·be finally given and transmitted to Barbara, his daughter.

This might have been a very laudable and creditable thing for the father to do in view of his marital difficulties, but the question is whether in that sort of a way one can defeat the law. We think the *Scobie case* has gone the limit, and in the syllabus of that case the Supreme Court clearly lays down the doctrine why it holds that this money in the Green estate did not go to the administrator, because there had been a present transfer of title to the joint depositor in the account. We do not think that that purpose appears in the instant case, but we think all the inferences, the conduct of the parties, and the testimony of the beneficiary under the arrangement adopted, all were to the effect that it was not intended to be a gift. In other words, the transaction is not anything more than it would have been had John Schmitt put this money in the bank as his money, in the name of his nephews, simply in trust for him, without giving them any beneficiary ownership in it. In that event it would surely have been reclaimable by the administratrix as assets

belonging to the estate, and in the instant case it was no more a transfer to them than it would have been if it had been done in the manner as just outlined.

The courts of Ohio have spoken on this question a number of times. In the case of *O'Brien, Admx.,* v. *O'Brien,* 112 Ohio St., 202, 147 N. E., 4, decided March 17, 1925, the Supreme Court said that in order to constitute a valid gift *inter vivos* or *causa mortis,* it was essential to its validity that during the lifetime of the donor he must divest himself of all dominion and invest the donee with dominion.

In the instant case, from the testimony of Louis Schmitt and Barbara Schmitt, Louis Schmitt had no dominion over this fund, and inasmuch as Edmund acted in the same manner as Louis, the inference is strong that he held the money the same way. In other words, the purpose of this whole proceeding was to prevent the widow of Schmitt from claiming her portion in this property. If Schmitt had undertaken to do this by will, Pauline, his widow, would still be entitled to her dower interest, and so this method was undoubtedly adopted to accomplish the purpose. Of course, now, we recognize the fact that if this money actually belonged to Louis and to Edmund what they did with it would not make much difference, but in view of the situation, as disclosed by this record, what they did with this money is a circumstance so strong, the inference is so real, that one can come to no other conclusion than that neither of the nephews had any ownership in this money. They were simply conduits, or means whereby Barbara was to get it.

There was one other way in which this could have been done without making a will. John Schmitt

could have called in Barbara, his daughter, and could have given her this money by gift *inter vivos;* or he could have made a deposit similar to the one that Green made in the *Scobie case;* he could have done it that way, but he could not do it the way he undertook to do it. His act was ineffectual, and when he died intestate this money in the two accounts was money belonging to the estate, because the trust ended with the death of the donor, and the nephews had no power over the money after the death of the donor. If they were acting as his agents or trustees, or in any other representative capacity, then their power to transfer this property over to some one designated by him ended, for the document was not acknowledged and signed as a last will and testament; and, of course, as already pointed out, if the purpose was as is surmised, a last will and testament would not have been effectual; and had John Schmitt turned this money over to Barbara *inter vivos* he of course would have lost all control over it, and might thus have become in need himself.

We think on the whole this record does not show that John intended to give up, or gave up, control over this property; or that either Louis or Edmund Schmitt, his nephews, got or claimed any interest in the property; that the property was John Schmitt's when he died, and of course became assets of his estate.

We think, therefore, the judgment of the court below must be reversed, and the case remanded to the common pleas court for a new trial.

*Judgment reversed and cause remanded.*

SULLIVAN, P. J., and LEVINE, J., concur.