## GIBSON v. INDUSTRIAL BANK OF WASHINGTON et al.

### No. 157.

Municipal Court of Appeals for the
District of Columbia.

Feb. 18, 1944.

Maurice Friedman, of Washington, D. C., for appellant.

Charles H. Houston, of Washington, D. C., for appellee Industrial Bank of Washington.

Karl Kindleberger, of Washington, D. C., for appellee Dolly Gibson.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

At the death of Robert Gibson on May 22, 1942, there was a balance of $410.62 on deposit with appellee Bank in a savings account originally opened by him on September 1, 1939 in his own name. On November 17, 1941, the name of Herman J. Gibson, brother of Robert, had been added to the account. During the last illness of Robert, the name of his wife, Dolly Gibson, was added to the account. Shortly after Robert's death, his widow, Dolly, being in possession of the passbook, was permitted by the bank to withdraw the entire balance. She deposited this sum in her own account and made withdrawals against it until the balance in her account was reduced to $300.

Thereafter, apparently because of asserted claims of Herman, the bank refused to permit Dolly to draw further against her account. Thereupon, she brought action against the bank for $300. The bank answered that it was subject to the conflicting claims of Herman and Dolly, offered to pay the sum according to the judgment of the court, and asked for an order requiring Herman and Dolly to interplead. No order of interpleader was entered, but shortly thereafter Herman brought action against the bank for $410.62, the entire balance in the account at Robert's death. The two actions were consolidated for trial.

The cases were tried without a jury and judgment resulted in favor of Dolly in her action and against Herman in his action. Herman brought this appeal.

The showing made by Herman in support of his claim was that Robert originally had a savings account with the bank in the name of himself or his wife, but that due to some differences with his wife Robert opened savings account No. 7794—the account in issue—in his own name; that on November 17, 1941, approximately two years after the opening of the account, Robert visited Herman in Baltimore and had Herman sign a signature card for account No. 7794, and thereafter had the bank change its records to place the account in the names of Robert Gibson or Herman J. Gibson. By reason of this transaction Herman claimed that he became a joint depositor in the account with the right of survivorship at the death of his brother. He also attacked the validity of the transaction by which Dolly's name was added to the account and possession of the passbook obtained by her.

Thus, Herman's claim is based solely on the fact that approximately six months prior to the death of Robert, Herman's name was added to the savings account. It is conceded that the money in the account was deposited by Robert, that Herman never had possession of the passbook, and never withdrew any sum from the account or exercised or attempted to exercise any dominion over the account during the life of Robert. Examination of the exhibits shows that after November, 1941 the bank's ledger card and the passbook for the account recited that title to the account was in Robert Gibson or Herman J. Gibson, that the signature card for the account carried as authorized signatures the names of Robert Gibson and Herman J. Gibson with the notation "either may draw." This notation did not appear on either the ledger card or the passbook. The passbook contained rules and regulations regarding withdrawals, including one providing that the passbook must be presented to the bank whenever a withdrawal was made, and that possession of the passbook should be sufficient evidence of ownership to authorize the payment of money from the account.[1]

In Garrett v. Keister, 61 App.D.C. 25, 56 F.2d 909, 910, the court said:

"It is elementary that a joint tenancy may exist in personalty as well as in realty, and that a survivorship may exist in a bank account or in a special account where such is stipulated in the agreement of the parties."

And in Quigley v. Quigley, 66 App.D.C. 134, 85 F.2d 300, where a building and loan association account read: "Marion K. Quigley or Mary E. Quigley pay to the order of either, at the death of either, balance to belong to survivor," the court said:

"There is nothing in this case which would justify the court in invalidating this contract, which clearly expresses an intention on the part of the mother to establish a joint account, with the power in either party to withdraw part or all of the money at any time, and that upon the death of either the balance remaining in the account should belong to the survivor."

In Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, a building and loan

---

[1] Rules of the bank printed in the passbook are binding upon the parties. Hardee v. George H. Price Co., Inc., 67 App.D.C. 25, 89 F.2d 497.

account was placed in the names of two persons "as joint owners, subject to the order of either, with the balance at the death of either to the survivor." The court held that the words of the contract expressed a clear and unequivocal intention in the donor to make the donee a joint owner, with the right of survivorship, and that, in the absence of fraud or mistake, such intention must control and could not be altered by parol testimony.

In the last named case, the court said:

"The mere appending of the name of the donee to the account, without words expressing or showing an intention to create in that donee a joint interest or ownership, may not be an act of that unequivocal character which excludes extrinsic explanation. The donor may not have expressed his intention with that conclusiveness and unambiguity which preclude parol provisioning."

In the present case appellant's name was merely appended to the account, and it cannot be said that there was a contract or writing which clearly expressed an intention on the part of Robert Gibson to establish a joint account with the right of survivorship.[2] Accordingly, this case comes within the language of Matthew v. Moncrief and required extrinsic or parol explanation of the intention of Robert Gibson when he added the name of appellant to the account.[3] The word "joint" was not used; there was merely the appending of the words "or Herman J. Gibson." The account was completely silent as to right of survivorship.

The only evidence of the intention of Robert Gibson is that given by his brother, the appellant. He testified that when Robert came to see him in Baltimore, and had him sign the signature card he stated that it was "so that he (Herman) could get his money if he (Robert) died."

The evidence, we think, clearly and overwhelmingly supports the finding of the trial court that Robert had no intention of giving Herman a present interest in the account, that Robert intended to retain exclusive and absolute control of the account so long as he lived, and that his only purpose in adding Herman's name to the account was an intention that any balance in the account at the time of his death should go to Herman. Indeed, appellant claims nothing more, stating in his brief that "it was evident that the intention of the decedent was to have his brother receive the balance of the account in the event of his death."

There was no gift inter vivos, because no present interest passed and control of the account remained in Robert who retained the passbook.[4] There was no gift causa mortis, not only because of lack of a completed delivery but also because the act was not done in contemplation of impending death. There was an attempt to direct disposition of the balance after the owner's death, and this amounted to nothing more than an attempted testamentary disposition without compliance with testamentary requirements.[5]

That Robert's desire was directed wholly towards disposition of the fund after his death is evidenced by the fact that during his last illness he was worried about having "cut off" his wife from the account and when her name was added to the account and the passbook put in her possession, it was with the understanding that she was not to "touch it while he lived."

In Commercial Trust Co. v. White, 99 N.J.Eq. 119, 132 A. 761, 763, cited in the Moncrief case, the court said:

"The form of these deposits indicates that, if he had any donative intent toward her, it was confined to such balance as might remain to his credit at his death, which interest should not vest in her until that time, thus making his gift a testamentary disposition of funds without comply-

2 Section 26—201 of the Code providing that when deposits are made in the names of two or more persons, payable to either, or payable to either or the survivor, such deposit may be paid to either of said persons whether the other be living or not, is obviously for the protection of the bank and does not purport to fix ownership of the deposit.

3 Whether viewed as a gift or a contract, "the courts have agreed that the question of the intention of the donor is material." Matthew v. Moncrief, supra.

4 Cf. Smith v. Acorn, D.C.Mun.App., 32 A.2d 252.

5 If, in spite of failure to comply with the formalities requisite for a valid will, such an arrangement could be upheld, it would evade Code section 18—211, which, among other things, permits a widow to claim her distributive share of the personal estate of her husband when the will makes no devise or bequest in her favor.

ing with the law of wills, and therefore void."

In many other situations, similar to the present, it has been held that if the design of the owner of funds is to retain sole control during his life and the intended transfer or gift is not to take. effect until the death of the owner, then such an arrangement is testamentary in character and void under the statute of wills.[6]

All the evidence unmistakably points to Robert's determination to keep the funds as his own property so long as he lived. He had no desire or intention of parting with either legal or equitable title to the account in his lifetime. His concern was the disposition of the balance at his death, but he attempted to make such disposition in a manner not permitted by law.

Accordingly, we hold the trial court was correct in its finding in favor of the bank in the action against it by Herman J. Gibson, and the judgment in that case is affirmed.

As said above, appellant's action against the bank was tried together with the widow's action against the bank, and appellant noted an appeal from the judgment in each case and named the widow and the bank as appellees. Appellant's brief, in a large part, is devoted to contending that the judgment in favor of the widow against the bank was erroneous and should be reversed. However, appellant was not a party to the widow's suit. He sued for $410.62, the balance in Robert's account. She sued for $300, the balance in her account. Consolidating the cases "for trial" did not combine them into one cause of action or effect a true consolidation where one judgment would be decisive against all parties to both suits. Separate judgments were entered in each action. From the judgment in favor of the widow against the bank, she could not and the bank did not appeal.

Can this court review a judgment from which neither party has appealed? A reversal redounds to the benefit of only those who have appealed. Swofford v. International Mercantile Marine Co., 72 App.D.C. 225, 113 F.2d 179. But a reversal of the judgment in the widow's case could not benefit appellant because he was not a party to that action; nor would such reversal benefit the bank, because it did not appeal and the judgment would have to stand as to it. Even if the two cases be considered as one in the nature of an interpleader, unless Herman J. Gibson has a valid claim—which we hold he does not— he has no standing to question the judgment in favor of the widow. Silverstein v. J. McAllister & Sons, 110 N.J.Eq. 435, 160 A. 409. Under these circumstances we do not review the judgment in favor of Dolly Gibson.

The judgment in Municipal Court action 415,074 is affirmed.

---

[6] Hudson v. Bradley, 176 Ark. 853, 4 S. W.2d 534; Appeal of Main, 73 Conn. 638, 48 A. 965; Maine Sav. Bank v. Welch, 121 Me. 49, 115 A. 545; Springvale Nat. Bank v. Ward, 122 Me. 227, 119 A. 529; McKenna v. McKenna, 260 Mass. 481, 157 N.E. 517; Burns v. Nolette, 83 N.H. 489, 144 A. 848, 67 A.L.R. 1051; McGillivray v. First Nat. Bank, 56 N.D. 152, 217 N.W. 150; Schmitt v. Schmitt, 39 Ohio App. 219, 177 N.E. 478; Jonte v. English, 171 Okl. 291, 40 P.2d 646; McCartin v. Devine, 66 R.I. 100, 17 A.2d 864.