BOBO, Appellant,

v.

STANSBERRY et al., Appellees.

[Cite as *Bobo v. Stansberry,* 162 Ohio App.3d 565, 2005-Ohio-3928.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 04CA2807.

Decided July 29, 2005.

566

William C. Boulger, for appellant.

Phillips & Street and John Street, for appellees.[1]

McFARLAND, Judge.

{¶ 1} Plaintiff-appellant, Betty E. Bobo, appeals from the decision of the Ross County Common Pleas Court granting summary judgment in favor of appellees, Sharon Kay Stansberry and Kathy L. Gray. Appellant alleges that the trial court erred in determining that an attempted gift made by Robert W. Miner, appellees' father, to appellant, Mr. Miner's ex-wife, failed as a completed inter vivos gift or gift causa mortis. Appellant also argues that the trial court erred in its failure to allow a jury to decide the issues in this matter. We are not persuaded by appellant's arguments and therefore hold that the trial court properly granted summary judgment in favor of appellees.

{¶ 2} Appellant filed a complaint in the Ross County Common Pleas Court on January 6, 2004, naming as defendants Sharon Stansberry and Kathy Gray, executors of the estate of Robert W. Miner (their father), and Joseph F. Junk, executor of the estate of Anna H. Willis (of which Miner was an heir and executor). Miner was appellant's ex-husband. In her complaint, appellant alleged that Miner "made a gift of the amount of the automobile loan [appellant] received from the Mead Credit Union to the extent of $20,000.00 of the funds Robert Miner would receive as a beneficiary of the estate of Anna H. Willis with

---

1. Joseph F. Junk, executor of the estate of Anna H. Willis, named as an original defendant in this matter, was dismissed by the trial court's entry and order dated July 8, 2004. Despite this dismissal, defendant Junk continued to be served on correspondence from both opposing counsel and the trial court, and also is identified as an appellee on briefs submitted to this court by the other named parties. However, it appears that defendant Junk's involvement in this matter effectively ended with the July 8, 2004 dismissal and that he is not an appellee in the present case.

the balance of said $20,000.00 being paid into [appellant's] savings account at the Mead Credit Union."

{¶ 3} Appellant attached a copy of the document purporting to be, or to represent, the alleged gift as Exhibit A to her complaint. The document was signed by Miner, witnessed by two individuals, and notarized. It reads as follows:

{¶ 4} "I, Robert Miner, being first duly sworn, acknowledge the following action to be of my own free will. Upon my demise, I wish that $20,000.00 out of the funds that I am to receive as beneficiary to the Estate of Ann Willis be directed for the use of paying off the automobile loan of Betty Bobo at the Mead Employees Credit Union, with any difference between the $20,000.00 and the automobile loan payoff being deposited to the savings account of Betty Bobo at Mead Employees Credit Union."

{¶ 5} The document is untitled and is dated September 12, 2003.

{¶ 6} Appellees filed an answer to the complaint, asserting that Miner lacked the mental capacity to make a gift at the time the gift was allegedly made, or attempted, and also asserted that the acts of Miner in making the gift were a result of appellant's undue influence over him. Appellees also contended that they, acting as joint powers of attorney for Miner, revoked the claimed gift by a writing dated September 29, 2003, and they attached the document as an exhibit.

{¶ 7} Appellant and appellees disagree as to the impetus for the creation of the document allegedly evidencing a gift. Appellant maintains that Miner initiated this action, while appellees argue that appellant exerted undue influence on Miner in order to have him execute the document. The employees of Mead Credit Union, where the document was prepared, stated by affidavit that Mr. Miner seemed "worn out" and "tired," but did not provide any information from which one could reasonably infer incompetency or incapacity. The trial court, in its final entry regarding this matter, found that "[t]he writing is subject to close examination. First, it recites that the writing is of Miner's own free will and this along with his competence are not seriously in question."

{¶ 8} On August 3, 2004, appellant moved for summary judgment and on August 17, 2004, appellees responded by moving for summary judgment as well. Briefs contra by both parties followed. The trial court ruled on the competing motions for summary judgment, finally granting summary judgment in favor of appellees.

{¶ 9} In its final entry, the trial court made several findings related to the failure of Mr. Miner's actions to result in a valid, completed gift. The trial court found that the language Miner used was precatory and not that of a gift, though that may have been his intention. The court also found that there was no

delivery of the $20,000 gift on September 12, 2003, as claimed by appellant, because Miner "did not have title and ownership at that time of that amount of money to give." The trial court's reasoning for this statement was that "the money was only an expectancy, an inchoate right, but not something that could be delivered, not something [over which] he could relinquish all control with that paper."

{¶ 10} The trial court found that the gift failed for several reasons, expressly stating that "[s]ince the 'action' as Miner's instrument designates itself was not to take effect until his demise, a gift, it [sic] any, could only take effect at the time of his death. A gift causa mortis is revocable at any time up to that event and was indeed revoked in no uncertain terms by the daughters exercising the power of attorney granted them by Miner. * * * The revocation was effected September 29, 2003, several weeks before Miner's passing." Further the court found that "[w]here disposition is to take effect after one's death and the disposition is different from what the law would require in the case of intestacy, it is not valid unless made through a last will and testament."

{¶ 11} Appellant now appeals from the grant of summary judgment in favor of appellees, and assigns the following errors for our review:

{¶ 12} "I. The court incorrectly concluded that with respect to the use of the word 'wish' in the written gift was precatory and not as an indirect demand.

{¶ 13} "II. The court incorrectly concluded there was no delivery.

{¶ 14} "III. The court incorrectly concluded that Robert W. Miner did not have title and ownership to $20,000.00 and was only 'an expectancy' and not something that could be delivered [sic].

{¶ 15} "IV. The court incorrectly assumed the daughters of Robert W. Miner had power of attorney from Robert W. Miner to revoke the gift of $20,000.00 on September 29, 2003.

{¶ 16} "V. The trial court failed to allow the jury to try the issues in this case. The primary issue in this case is why did Robert W. Miner decide to give his former wife $20,000.00."

{¶ 17} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411. Summary judgment is appropriate when the following have been established: (1) that there is no genuine issue as to any material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the

evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; cf., also, *State ex rel. Coulverson v. Ohio Adult Parole Auth.* (1991), 62 Ohio St.3d 12, 14, 577 N.E.2d 352; Civ. R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 295, 662 N.E.2d 264.

{¶ 18} We initially address appellant's fifth assignment of error, in which appellant asserts that the trial court failed to allow the jury to try the issues in this case. Appellant's only statement in support of this assertion is one sentence that reads "[t]he primary issue in this case is why did Robert W. Miner decide to give his former wife $20,000.00." Appellant offers no explanation of this statement and it is unclear from the facts before us what appellant is attempting to argue by making this statement.

{¶ 19} In our view, the primary issue in this case is whether Mr. Miner's actions constituted creation of a valid and completed gift. A gift, by its very nature, is gratuitous and is defined as "[t]he voluntary transfer of property to another made without compensation." Black's Law Dictionary (8th Ed.2004) 709. Thus, we find that Mr. Miner's reasons for making, or attempting to make, the gift are irrelevant. Further, appellant moved for summary judgment in the trial court. Implicit in such a motion is the representation that no genuine issue of material fact exists. Nowhere in her motion for summary judgment does appellant refer to the reasoning behind Mr. Miner's attempted gift. In fact, the first mention of this claimed "primary issue" appears in the final assignment of error of appellant's brief submitted to this court, and it appears without any argument or explanation in support.

{¶ 20} Appellees respond to appellant's assertions by arguing that appellant was not entitled to a jury trial because she failed to file a demand for a jury trial as required by Civ.R. 38(B). Appellant, however, responds to this argument by asserting that a plaintiff is authorized to move the trial court to have a jury trial of an issue or issues under Civ.R. 39(C). While we agree with appellant's interpretation of Civ.R. 39(C), appellant never moved the court for a jury trial and has therefore waived her right to now complain that certain issues should have been submitted to a jury.

{¶ 21} Appellant also argues that under Civ.R. 39(B), the trial court, in its discretion, may order a jury trial of any issue with an advisory jury. Again, although this is accurate, appellant overlooks the fact that she failed to request a jury trial to begin with. In light of this fact, coupled with appellant's failure to request an advisory jury for any issues, we find that the trial court did not err when it did not empanel an advisory jury sua sponte. Therefore, we find that appellant's fifth assignment of error is without merit.

{¶ 22} As appellant's first, second, and third assignments of error are interrelated, we address them in combination. In her third assignment of error, appellant argues that the trial court incorrectly concluded that Robert W. Miner did not have title and ownership to $20,000 in the estate of Anna Willis, reasoning that it was only an expectancy and not something that could be delivered. We agree with appellant's argument.

{¶ 23} The subject of the attempted gift was Miner's interest in a decedent's estate. "An interest which has vested in a distributee by reason of the death of a decedent may be the subject of an executed gift, even though there has been no manual delivery of specific property, *if the intention to make a present gift appears and the donor has done all that could reasonably have been done to vest the donee with the intended right or interest.*" (Emphasis added.) 38 Am.Jur.2d (1999), Gifts, Section 42. Miner was an heir, as well as executor of the estate of Anna H. Willis, who was deceased at the time of the attempted gift. As such, Miner had a vested interest that was capable of being the subject of a gift, provided all other elements regarding the creation of a gift were satisfied. Further, even if Miner's interest was an expectancy, as described by the trial court, R.C. 2131.04 provides that "[r]emainders, whether vested or contingent, executory interests, and other expectant estates are descendible, devisable and alienable in the same manner as estates in possession." Because we find that Miner had a vested interest capable of being the subject of a gift, we technically sustain appellant's third assignment of error; however, because of our disposition of appellant's first and second assignments of error, the fact that Miner had an interest capable of being given away is irrelevant.

{¶ 24} In her first and second assignments of error, appellant argues that the trial court erred in concluding that there was no present intention to give and therefore no delivery of the gift. We disagree with both of these arguments. There are two categories of gifts: (1) gifts inter vivos and (2) gifts causa mortis. Appellant argues that Miner made a gift to her; however, it is unclear whether appellant believes that the gift was inter vivos or causa mortis. Rather, appellant seems to argue in the alternative. Appellees, on the other hand, argue that this was either a gift causa mortis that was revoked or that it failed as a gift entirely and also failed as an attempted testamentary disposition.

{¶ 25} "A gift *inter vivos* has been defined as an immediate, voluntary, and gratuitous transfer of * * * personal property by one to another. It is essential to its validity that transfer be executed, for the reason that, there being no consideration therefor, no action will lie to enforce it. *A gift inter vivos has no reference to the future,* but goes into immediate and absolute effect. To render the gift complete, there must be an actual delivery of the chattel, so far as the subject is capable of such a delivery, and without such a delivery the title does not pass. If the subject be not capable of actual delivery, there must be some act equivalent to it. * * * [T]he donor must part, not only with the possession, but with the dominion and control, of the property. *An intention to give is not a gift,* and so long as the gift is left incomplete a court of equity will not interfere and give effect to it." (Emphasis added.) *Flanders v. Blandy* (1887), 45 Ohio St. 108, 113, 12 N.E. 321.

{¶ 26} "Gifts *causa mortis* are of a mixed nature, resembling gifts *inter vivos* in the essential elements of delivery, and resembling legacies in being subject to the debts of the deceased, and being ambulatory or revocable, and contingent on death." *Gano v. Fisk* (1885), 43 Ohio St. 462, 470, 3 N.E. 532. A gift causa mortis "must be completely executed, precisely as required in the case of a gift *inter vivos* subject to be divided by the happening of any of the conditions subsequent; that is, upon actual revocation of the donor, or by the donor's surviving the apprehended peril, or outliving the donee, or by the occurrence of a deficiency of assets necessary to pay the debts of the deceased donor. But if the gift does not take effect as an executed and complete transfer to the donee of possession and title, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only if made and proved as a will." Id. at 473, 3 N.E. 532. Further, in *Gano,* the Supreme Court of Ohio reasoned that "the delivery must be such to confer upon the donee the right to reduce the fund to possession; and *where the donor annexes a condition precedent, which must happen before it becomes a gift, and the contingency contemplated is the donor's death, the gift cannot be executed in the donor's lifetime, and consequently can never take effect.*" (Emphasis added.) *Gano,* 43 Ohio St. at 473, 3 N.E. 532, citing *Basket v. Hassell* (1883), 107 U.S. 602, 2 S.Ct. 415, 27 L.Ed. 500.

{¶ 27} The Supreme Court of Ohio again compared gifts inter vivos with gifts causa mortis in *O'Brien v. O'Brien* (1925), 112 Ohio St. 202, 147 N.E. 4. In *O'Brien,* the court reasoned that "[t]he essentials of a gift *inter vivos* are the purpose of the donor to make the gift and a delivery of the thing given, which delivery may be actual, constructive, or symbolical; it is immaterial which, so long as it divests the donor of all dominion and invests the donee with dominion." Id. at 206, 147 N.E. 4. The court also reasoned that "[a] gift *causa mortis* is a

gift made by a person in expectation of death, and upon condition that the donor dies as anticipated. The essentials of the gift are the same, the distinguishing features being that a gift *causa mortis* is revocable during the life of the donor and a gift *inter vivos* is irrevocable." Id. However, the court also noted that "[t]his court has repeatedly held that proof of the intention of a decedent to make a gift either inter vivos or causa mortis, is not itself sufficient to sustain such a gift." Id.

{¶ 28} The facts sub judice are similar to the facts considered by the Supreme Court of Ohio in *Hamor v. John R. Moore's Admrs.* (1858), 8 Ohio St. 239, 1858 WL 8. In *Hamor*, the facts involved a paper writing that said "[f]or value received, I promise to pay to Mrs. Hamor, wife of John Hamor, the sum of $300, as a small recompense for the kindness shown to me by her. The executors of my last will and testament are hereby directed to pay the above to Mrs. H., or her sons, Moses and John, after my decease." The paper was delivered to a third party to give to Mrs. Hamor upon the death of the donor. Based on these facts, the Supreme Court of Ohio held that "[t]his was not a gift *inter vivos,* nor a gift *causa mortis,* nor was it good as a testamentary disposition." Id.

{¶ 29} The court's reasoning in arriving at its decision is quite instructive and therefore, it is set forth in its entirety:

{¶ 30} "1. Here there was no gift *inter vivos,* for there was no delivery during the life of the intestate, and no such delivery was intended by him; and to a valid gift inter vivos, delivery and acceptance, either actual, constructive, or symbolical, are every where [sic] held to be essential. And had the paper, by the intestate or his order, been delivered in his lifetime, nothing would have passed to the donee but the title to the paper *as paper*; for, if there was no legal consideration, the *promise* would be void; while, on the other hand, if there were a good consideration to sustain the promise, it would not be a gift—it being essential to a gift that it should be voluntary and without consideration.

{¶ 31} "2. Nor do the facts present the case of a gift *causa mortis.* A delivery during the life of the donor, and subject only to his implied power of revocation during life, is as essential to a good gift *causa mortis* as to a gift *inter vivos.* And even if there had been a delivery of the paper during the life of the donor, 'the gift of the maker's own note is the delivery of a promise only, and not of the thing promised, and the gift therefore fails.' Kent's Com. 438, *Harris v. Clarke,* 3 Comst. Rep. 93.

{¶ 32} 3. The paper is not good as a testamentary disposition; because it is not executed in the manner which the statutes prescribe." *Hamor,* 8 Ohio St. at 242.

{¶ 33} We find that the reasoning in *Hamor* applies to the facts sub judice. Here, the writing fails as either a gift inter vivos or a gift causa mortis

because there was no present intention to transfer dominion and control of the interest in the decedent's estate to the donee. The writing plainly states, "[U]pon my demise, I wish that $20,000 out of the funds that I am to receive as a beneficiary to the Estate of Ann Willis be directed for the use of paying off the automobile loan of Betty Bobo at the Mead Employees Credit Union, with any difference between the $20,000.00 and the automobile loan payoff being deposited to the savings account of Betty Bobo at Mead Employees Credit Union." Despite appellant's contention regarding the meaning of the word "wish," we find that there was no present intention to convey and therefore no delivery of the gift.

{¶ 34} The attempted gift was structured so that the money would pass only upon the death of the donee. Further, from the language of the document, the money was not to go directly to appellant as donee, but rather to the Mead Credit Union for satisfaction of a loan, although clearly for the benefit of appellant. Because no present intention to transfer or convey the subject matter of the gift can be inferred from the writing, which looks to the future for some condition precedent to occur (the death of the donee), there was no delivery. Therefore, the writing fails as either a gift inter vivos or gift causa mortis.

{¶ 35} Appellant argues in her fourth assignment of error that the court incorrectly assumed that the daughters of Robert Miner had power of attorney to revoke the gift of $20,000 on September 29, 2003. Because we find that the document fails as either a gift inter vivos or a gift causa mortis, we do not reach the issue of whether the attempted revocation by the appellees, acting through Mr. Miner's power of attorney, was effective. However, we find that if there had been a valid, completed gift causa mortis, appellees' subsequent revocation would have been effective in light of the language contained in the power-of-attorney document, which conferred upon appellees "full power and authority to do and perform all and every act and thing necessary to be done, as fully to all intents and purposes as I might or could do if personally present, with full power of substitution and revocation." The document further provided that "I hereby ratify and confirm all that my attorney does pursuant to this power." Therefore, assuming arguendo that Miner's actions resulted in a completed gift causa mortis, which they did not, the gift would have been revoked by the revocation document executed by appellees, on Miner's behalf.

{¶ 36} This, however, does not end our inquiry. The Supreme Court of Ohio, in *Hamor*, noted that the writing at issue failed as an attempted testamentary disposition because it was not executed "in the manner which the statutes prescribe." *Hamor*, 8 Ohio St. at 242. Here, the trial court referred to a similar notion when it stated that "[w]here disposition is to take effect after one's death and the disposition is different from what the law would require in the case of

intestacy, it is not valid unless made through a last will and testament." See *Phipps v. Hope* (1866), 16 Ohio St. 586, 1866 WL 23, paragraph two of the syllabus (where the court held that "[d]irections by an owner in respect to a disposition of his property, to take effect after his death, and different from such as the law would prescribe in case of intestacy, are of no validity unless made through the medium of a last will and testament").

{¶ 37} The writing at issue in the case sub judice does not have the formalities associated with a last will and testament. It is untitled and does not mention the existence of the previously created last will and testament. Nor does it revoke the prior will or purport to be a codicil. See Merrick & Rippner, Ohio Probate Law (1998), Section 59.03, citing *Clark v. Carpenter* (1921), 14 Ohio App. 278, 1921 WL 1105 (where the court held that "[a]s a rule, the legal effect of a codicil, properly executed *and referring to and identifying a previous will,* is to republish the will as modified by the codicil"). (Emphasis added.)

{¶ 38} Based on the foregoing, we find that the writing at issue fails as a testamentary disposition. Directions alone are insufficient to effect a transfer of property after one's death when such disposition would be contrary to the passage of the property through the laws of intestacy. In the case sub judice, Miner did not die intestate. He had a will that provided for the disposition of his property in a manner contrary to the directions expressed in the September 12, 2003 writing.[2] We find the statement by the *Phipps* court to be that much more compelling where, as here, the donor had a last will and testament and did not die intestate. For these reasons, we overrule appellant's second assignment of error.

{¶ 39} In light of our disposition of the first, second and fourth assignments of error, we need not address the issues of incompetency and undue influence raised by appellees. We accordingly affirm the judgment of the trial court.

Judgment affirmed.

ABELE, P.J., and HARSHA, J., concur in judgment only.

---

2. In fact, the affidavit of Sharon Kay Stansberry, attached in support of appellees' response to appellant's motion for summary judgment, states that Robert Miner reviewed his will in his attorney's office as recently as August 4, 2003, and decided not to make changes to his existing will, which provided that all of his property, real and personal, be left to Sharon Kay Stansberry and her sister, Kathy L. Gray, appellees in the present matter.