NEW BRITAIN NATIONAL BANK, CONSERVATOR (ESTATE OF BLANCHE C. GELINAS) *v.* LIFE INSURANCE COMPANY OF CONNECTICUT

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 15-702-15119J

Argued October 18, 1971—decided July 21, 1972

*John W. Hogan, Jr.,* of New Haven, on the brief for the appellant (defendant).

*Mitchell Gardner,* of New Britain, on the brief for the appellee (plaintiff).

DEARINGTON, J. The case was submitted on briefs. The complaint alleges that the plaintiff is conservator of the estate of Blanche C. Gelinas, hereinafter referred to as Blanche. The plaintiff claimed that two annuity contracts were issued by the defendant to Mary M. Rochette, deceased, hereinafter referred to as Mary. Mary was a sister of Blanche. In the applications for these contracts, which were attached to the contracts, Blanche is named as beneficiary although on the face of each policy is typed "None" after the caption "Supplementary Benefit." The plaintiff, depending on the insertion of "Mary C. Gelinas — Sister" after the caption "Beneficiary" in the applications, claimed a "lump sum payment" was due Blanche on the death of Mary amounting to the difference between the amounts paid the defendant by Mary and the total amount received by Mary prior to her death. By way of equitable relief, the plaintiff sought a reformation of each policy together with damages.

The defendant answered by admitting the issuance of each policy and that Blanche had been named as beneficiary in the applications but denied there were any sums due Blanche. After each side had rested, the defendant moved for a directed verdict and the motion was denied. Each party then agreed that two interrogatories be submitted to the jury: First, "Was there a mutual mistake by the defendant and Mary Rochette as to policy no. 10505, plaintiff's exhibit A?" Second, "Was there a mutual mistake by the defendant and Mary Rochette as to policy no. 11141, plaintiff's exhibit B?" The jury were instructed to answer each interrogatory "yes or no." The jury's verdict was "yes" to each question, and thereupon the court reformed each policy to be a "cash refund benefit annuity"

and rendered judgment for the plaintiff. Thereafter, the defendant moved to set aside the verdict and the judgment rendered thereon, but the motion was denied.

We first consider the assignment of error directed to the court's ruling admitting the testimony of Lionel Gelinas, the brother-in-law of Mary and the husband of Blanche. The defendant objected to that evidence and upon being overruled took an exception. It appears that at the time Mary applied for the annuity contracts, Lionel was an agent of the defendant. He had discussed annuities with Mary, and she had indicated an interest in purchasing such a type of contract. Because Lionel believed there might be a conflict of interest, since he was related to Mary and also an agent of the defendant, he called in Frank T. Sottile, a vice president of the defendant. Sottile on two occasions discussed annuities with Mary in the presence of Lionel, and as a result Mary applied for and was issued the two annuity contracts in question. Over the objection of the defendant, Lionel was permitted to testify to the declarations of Mary made to Sottile. Sottile at the time of trial was not employed by the defendant and his whereabouts were unknown. The trial court in its ruling was of the opinion that the declarations of Mary were admissible under § 52-172 of the General Statutes. The question was a difficult one for the court to decide, and we have been unable to find any reported cases on the subject. The court's reasoning appears to have been that the annuities in question could, under a liberal construction of the statute, be considered in the nature of "life insurance," in which event the declarations of Mary would be admissible. The pertinent part of § 52-172 is as follows: "In actions ... by or against the beneficiaries of any life or accident insurance policy insuring a person who is de-

ceased at the time of the trial, the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence." The defendant contends that "life . . . insurance" cannot be construed to include an annuity contract, since the latter materially differs from the former and is not generally regarded as life insurance. See 19 Couch, Insurance 2d § 81.2; 43 Am. Jur. 2d, Insurance, § 5.

Our first consideration is to determine whether there is a material difference between an annuity contract and life insurance. An annuity is a right —"bequeathed, donated, or purchased — to receive fixed or certain periodical payments, without contingency, either perpetually or for life or a stated period of time; and the determining characteristic of an annuity is that the annuitant has an interest only in the payments themselves and not in any principal fund or source from which they may be derived. Among typical modern annuities are those payable by insurance companies, and a 'refund annuity,' as distinguished from a 'straight' or 'simple' annuity, is one in which the insurance company agrees to pay an income for the life of the annuitant, in return for which the purchaser pays a single premium; if the annuitant dies before the entire principal plus interest has been paid out in the form of income, then the unused part of the principal is refunded to a designated beneficiary." 4 Am. Jur. 2d 406, Annuities, § 1; see *Spellacy* v. *American Life Ins. Assn.,* 144 Conn. 346, 355. "The conception of life insurance commonly accepted is this: It is an agreement wherein the insured makes payment or, more usually, agrees to make periodic payments, known as premiums, to an insurance company, in return for which, upon his death, it agrees to pay to those persons whom he designates as beneficiaries a definite sum of money; this it can do even though

the premiums he has paid do not, with their increment by investment, equal the sum paid on the death of the insured, because the payment is to be made from a general fund into which go the contributions of many persons in the same class; and the amount each of these pays is based upon such probabilities of the continuance of life that the aggregate of contributions by the whole group, with its increment from investment, will suffice to meet all demands for payments at death, whether death comes early or late." *Day* v. *Walsh,* 132 Conn. 5, 12. It is apparent that there is a material difference between an annuity contract and life insurance. An annuity contract is an agreement to pay periodic specified sums to the annuitant during the life of the annuitant rather than upon any further contingency, and is usually paid for in a single payment. The annuitant has an interest only in payments themselves and not in any principal fund or source from which they are derived. 4 Am. Jur. 2d, Annuities, § 1.

"In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes § 1-1. "Or, stated another way, statutory language is to be given its plain and ordinary meaning." *State* v. *Cataudella,* 159 Conn. 544, 553. "When the language used in a statute is clear and unambiguous, its meaning is not subject to modification by construction. . . . It is not the function of courts to read into clearly expressed legislation provisions which do not find expression in its words; . . . nor is it our function to substitute our own ideas of what might be a wise provision in the place of a clear expression of the legislative will. . . . The statute must be applied as its words direct." *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365; see *Granniss* v. *Weber,* 107 Conn. 622, 630. Words used in a statute "which have

acquired peculiar and appropriate meanings in the law must be construed and understood accordingly." *Spellacy* v. *American Life Ins. Assn.*, supra, 354.

We are of the opinion that when the legislature used the words "life insurance" it employed a term generally used and understood in insurance parlance to mean a type of insurance materially different from an annuity contract. In our construction of the statute, the declarations of Mary were inadmissible and a new trial must be ordered.

In the view we have taken it is unnecessary to consider other assignments of error with, however, one exception. The defendant further contends that the legal representative of Mary was a necessary party to the action. While the plaintiff was the administrator of Mary's estate, it brought the action in its capacity as conservator of Blanche's estate. The prevailing view is that the beneficiary named in a life insurance policy rather than the legal representative of the insured is the proper person to bring suit on the policy. 44 Am. Jur. 2d, Insurance, § 1923. We think the same reasoning may be applied to an annuity contract which provides for a beneficiary. Upon Mary's death, whatever amount of the annuity was claimed by Blanche formed no part of Mary's estate. *Sigal* v. *Hartford National Bank & Trust Co.*, 119 Conn. 570, 574. The court committed no error in so holding.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion CASALE[1] and DiCENZO, Js., concurred.

---

[1] Judge Casale was present at the arguments before the Appellate Division but was appointed to the Court of Common Pleas before publication of this opinion. The case is disposed of under the authority of § 51-46 of the General Statutes.