OPINION
{¶ 1} Plaintiff-appellant, Helen Adams, appeals the decision of the Warren County Court of Common Pleas, Probate Division, dismissing her claim against defendant-appellees[1] and dissolving the restraining order against them. We affirm the trial court's decision.
 {¶ 2} Appellant is the surviving spouse of Earl Adams ("the deceased"). On June 19, 2002, appellant filed a complaint in the Warren County Probate Court against appellees. On June 25, 2002, appellant filed an amended complaint, alleging that during his lifetime, the decedent used marital funds to purchase several annuities, and that he named the above children and stepchild as beneficiaries thereof upon his death.[2]
 {¶ 3} Appellant alleged that the transfer of the annuity funds was in violation of her right to receive her distributive share of the deceased's estate assets. Appellant further alleged that the annuity funds are probate assets of the deceased's estate and are subject to her right to receive a one-third distributive share of the estate. Appellant requested that the court grant declaratory judgment in her favor and that the proceeds of the annuities be declared probate assets. Appellant also requested that the court order appellees to transfer to the deceased's estate any proceeds of the annuities that they had already received as beneficiaries.
 {¶ 4} On June 25, 2002, the trial court issued a Temporary Restraining Order ("TRO") against appellees, prohibiting the insurance companies and financial institutions from paying the proceeds of the annuities to the beneficiaries and preventing the beneficiaries from disposing of any proceeds already paid to them. At a hearing on July 11, 2002, the court extended the TRO through August 10, 2002 and ordered the parties to submit stipulations to the court. On July 31, 2002, the parties submitted stipulations to the court stating that, during his lifetime, Earl Adams purchased annuities and other investments naming his children and stepchild as beneficiaries of such annuities and instruments.
 {¶ 5} On August 27, 2002, the trial court entered judgment in favor of appellees, stating that, "[t]here is no evidence before the Court that the funds used by decedent to purchase the annuities were funds that he did not have the right to expend." Further, the court stated that, "[t]he decedent did not retain such control over the annuities as to require a finding that the annuities and the death benefits therein should be considered probate assets." The court explained that annuities "are purely contractual in nature" and once the premium is paid, "the owner's rights are controlled by the contract." Appellant appeals the trial court's decision, raising the following assignments of error:
 {¶ 6} "THE COURT BELOW ERRED WHEN, IN ITS ENTRY OF AUGUST 27, 2002, IT DETERMINED THAT, WHEN EARL F. ADAMS, DECEASED, PURCHASED/ESTABLISHED APPROXIMATELY $280,000.00 IN ANNUITIES AND NAMED HIS CHILDREN AS BENEFICIARIES, HE DID NOT VIOLATE APPELLANT WIDOW'S RIGHT TO A DISTRIBUTIVE SHARE OF HIS ESTATE."
 {¶ 7} "THE COURT BELOW ERRED WHEN, IN ITS ENTRY OF AUGUST 27, 2002, IT DETERMINED THAT, DURING THE TIME THAT EARL F. ADAMS, DECEASED, OWNED THE APPROXIMATELY $280,000.00 IN ANNUITIES, HE DID NOT RETAIN SUFFICIENT DOMINION AND CONTROL OVER THE ANNUITIES TO RENDER THEM IN VIOLATION OF THE STATUTE OF WILLS."
 {¶ 8} In appellant's first assignment of error, she claims that the deceased violated her right to receive a distributive share of his estate. Appellant asserts that the funds that the deceased used to purchase the annuities were funds that he did not have the right to expend. Also, appellant argues that the deceased engaged in fraud by purchasing the annuities.
 {¶ 9} Essentially, appellant is arguing that the trial court's factual findings were against the manifest weight of the evidence. The trial court made a finding that appellant failed to produce evidence that the decedent purchased the annuities with funds that he did not have the right to expend. Further, the court found that appellant failed to show that the decedent engaged in fraud in purchasing the annuities.
 {¶ 10} A reviewing court will not disturb a trial court's findings of fact where there is competent, credible evidence to support its findings. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 11} Although appellant claims that the deceased used marital assets to purchase the annuities, she has failed to provide evidence supporting this claim. Simply because the deceased purchased the annuities while married to appellant does not necessarily mean that the annuities were purchased with marital assets.
 {¶ 12} Further, appellant has not provided evidence that the decedent committed fraud in purchasing the annuities. Appellant maintains that she is a creditor of the deceased and that he committed constructive fraud by purchasing the annuities. However, appellant is incorrect in her assertion that the relationship between a husband and his wife creates a debtor-creditor relationship. Rather, it is only the termination of a marriage that may give rise to a status of judgment creditor. See Dumasv. Estate of Dumas (1994), 68 Ohio St.3d 405, 409-410.
 {¶ 13} Appellant has provided no evidence that the trial court clearly lost its way or created a manifest miscarriage of justice in making its factual determinations. Accordingly, appellant's first assignment of error is overruled.
 {¶ 14} In appellant's second assignment of error, she argues that because the decedent retained the right to cancel, cash in, change the beneficiaries thereof, and receive income from the annuities, any transfer of funds from those annuities were incomplete gifts. Appellant maintains that because incomplete gifts are a violation of the Statute of Wills, the trial court should have considered the annuities and death benefits provided therein to be probate assets. We disagree, and hold that the annuities are nonprobate assets and are not included in the decedent's probate estate.
 {¶ 15} An annuity is an investment where a person or a company is obligated to pay to the annuitant a sum of money over stated intervals during the annuitant's life, in consideration for a gross sum paid for such an obligation. Bronson v. Glander (1948), 149 Ohio St. 57, 59. As correctly stated by the court below, annuities are purely contractual in nature. Annuities consist of an agreement to pay a certain sum to the annuitant annually during life or for a given number of years.Trangenstein v. Wheaton College Bd. of Trustees, 148 Ohio App.3d 382,384, 2002-Ohio-2937. The consideration for an annuity is usually represented by a single payment to the issuer of the annuity. Id.
 {¶ 16} At issue in this case is whether the proceeds paid to beneficiaries of annuities are assets that are subject to probate, or whether annuities may be used to avoid the probate process. Ohio courts have held that proceeds payable to a named beneficiary in a life insurance policy are not included in a decedent's probate estate. See Inre Gatch's Estate (1950), 153 Ohio St. 401, 403. However, Ohio courts have not addressed the specific issue of whether proceeds payable under an annuity contract are included in a decedent's probate estate.
 {¶ 17} Courts in other states have specifically held that annuity contracts are nonprobate transfers and do not become part of the decedent's estate. See Abernethy v. Abernethy (Ala. 1992), 611 So.2d 1021;Estate of Peterson (Cal. 1994), 28 Cal.App.4th 1742; Bergheger v. Boyle
(Ill. 1994), 258 Ill. App.3d 413.
 {¶ 18} Some Ohio courts appear to have referred to annuities as being nonprobate transfers of property, without specifically addressing the issue in this case. See Kopp v. Ohio Dept. of Job and FamilyServices (Apr. 11, 2002), Cuyahoga App. Nos. 80041, 80081, 80232 (stating that appellants' purpose in establishing annuities was to avoid probate, but that they failed to consider other nonprobate planning techniques);Byrley v. Nationwide Life Ins. Co. (1994), 94 Ohio App.3d 1 (stating that appellant purchased an annuity so that the funds would pass, upon her death, to a beneficiary, avoiding probate); In re Welsh's Estate (1960), 86 Ohio Law Abs. 549 (stating that an annuity was not a part of the decedent's estate).
 {¶ 19} In order for an asset to be included in a probate estate, title to the asset must rest in the decedent upon his death. Burns v.Daily (1996), 114 Ohio App.3d 693, 702-703. However, if title does not reside in the decedent upon his death, but passed to a third party by an inter vivos transaction or gift, then such property may not be included as an estate asset. Id.
 {¶ 20} To be a valid gift, the donor, during his lifetime, must completely divest himself of dominion and control over the property, and invest such dominion and control in the donee. O'Brien, Adm'x. v.O'Brien (1925), 112 Ohio St. 202, 206; In re Tonsic's Estate (1968),13 Ohio App.2d 195, 197. Any attempt to make a gift is ineffective where the owner retains dominion and control until his death. Lambert v.Lambert (1954), 95 Ohio App. 187, 191.
 {¶ 21} Appellant argues that the decedent's attempt to transfer proceeds of the annuity contract to the named beneficiaries was ineffective because he retained control over the annuities. Specifically, appellant claims that the right to cancel, cash in, change the beneficiaries thereof, and receive income from the annuities constitutes sufficient control and dominion over the annuities making the gift incomplete. However, by retaining these rights, decedent did not cause his gift transfers to become ineffective for lack of completeness.
 {¶ 22} The trial court was correct in finding that "the decedent did not retain such control over the annuities as to require a finding that the annuities and the death benefits provided therein should be considered probate assets." Because an annuity is a contract between the purchaser and the issuer, the rights of the parties are governed by principles of contract law. Wilson v. Dixon (1991), 73 Ohio App.3d 706,708. Thus, once the owner of an annuity makes a lump sum payment as consideration for the contract, the owner's rights are derived from the terms of the contract. Although the decedent did have the right to cancel, cash in, change the beneficiaries thereof, and receive income from the annuities, the decedent did not reserve these rights at the time he made the gift. Rather, these rights were based on the contract between the decedent and the issuers of the annuities.
 {¶ 23} Also, the trial court correctly stated that "[t]he decedent had no more control over the annuit[ies] than one does over a life insurance policy." Typically, an insured under a life insurance policy has the right to change the beneficiaries of the policy without the consent of the insurer, if the right to change beneficiaries is provided in the policy. See Atkinson v. Metropolitan Life Ins. Co. (1926),114 Ohio St. 109. Similarly, an insured usually has the right to cancel the policy, which is also a right that is provided in the policy contract and is subject to the terms of the contract. See Gibbons v. Kelly
(1951), 156 Ohio St. 163.
 {¶ 24} However, the difference between an insured's right to cancel an insurance policy and an owner's right to cancel an annuity is that the owner of an annuity has the ability to cash in the remaining principal, or the remainder of the initial lump sum payment. This difference is based on the nature of insurance policies and annuity contracts, which the Ohio Supreme Court explained in Bronson v. Glander
(1948), 149 Ohio St. 57. In Bronson, the court stated that "a life insurance contract constitutes an [agreement] to pay a specified sum of money on the death of the insured or on his reaching a certain age, whereas an annuity contract is one in which there is an agreement to pay a certain sum to the annuitant annually during life or for a given number of years. The consideration for an insurance contract is denoted a premium and is payable annually or at fixed intervals during the year; the consideration for an annuity contract is not regarded as or denominated a premium and is usually represented by a single payment." Id. at 59.
 {¶ 25} With regard to a person's ability to cancel the contract, the difference between insurance policies and annuity contracts is not that the owner of an annuity has more control over the contract than an insured has over the policy. Rather, the difference is that the owner of an annuity merely has the contractual right to be reimbursed what is left of the amount paid in consideration for the annuity, subject to the terms of the annuity contract.
 {¶ 26} Another difference between an insurance policy and an annuity contract is, as the court stated in Bronson, that an annuitant receives periodic payments of interest, and the beneficiary of a life insurance policy receives a lump payment upon the death of the insured. Id. at 59. Again, this difference lies, not in the amount of control an annuitant or insured holds over their respective contracts; rather, the difference is in the nature of annuities and insurance policies. Further, the right to receive income payments in an annuity contract is not related to any amount of control an annuitant has over the annuity. As the trial court properly stated with respect to the income payments, "the decedent enjoyed the benefits of a contract, which provided certain periodic payments to him."
 {¶ 27} The differences between insurance policies and annuities are minimal when an annuity provides for a death beneficiary. In the case at bar, the decedent set up the annuities as refund annuities. A refund annuity provides that if the annuitant dies before the entire principal and interest has been paid to the annuitant in the form of income, the unused portion of the principal is refunded to a designated beneficiary.Bartlebaugh v. Pennsylvania R. Co. (App. 1948), 51 Ohio Law Abs. 161, appeal dismissed on other grounds, 149 Ohio St. 585, and judgment modified on other grounds, 150 Ohio St. 387.
 {¶ 28} In considering a similar issue regarding annuities, another court held: "the prevailing view is that the beneficiary named in a life insurance policy . . . is the proper person to bring suit on the policy. 44 Am. Jur.2d, Insurance, § 1923. We think the same reasoning may be applied to an annuity contract which provides for a beneficiary." NewBritain Nat'l. Bank v. Life Ins. Co. of Connecticut (Con. 1972), 6 Conn. Cir. Ct. 674, 679.
 {¶ 29} An annuity may be created for any period of time, and its duration and type is primarily a question of the owner's intent. 4 American Jurisprudence 2d (1995), Annuities, Section 6; 3 Ohio Jurisprudence 3d (1998), Annuities, Section 7. By designating his children and stepdaughter as primary beneficiaries of the annuities and by not designating any co-owners of the annuity, the deceased created a return annuity. This annuity paid income to him during his life, and then upon his death, the proceeds of the annuity became a gift to the named beneficiaries. Because a return annuity provides for a lump sum payment upon the death of the owner, this type of annuity is similar to a life insurance policy, where a lump sum payment is made to the beneficiary of an insured's policy.
 {¶ 30} Appellee goes to great lengths in arguing that annuities and insurance policies are not the same, when neither appellee, nor the trial court has made that assertion. Despite the differences between a life insurance policy and the refund annuity contracts in this case, they are essentially similar for estate planning and probate avoidance purposes. Moreover, R.C. 3911.14 provides that a life insurance company may hold the proceeds of any life insurance or annuity contract without being subject to legal process and the claims of beneficiaries' creditors. R.C. 3911.14.
 {¶ 31} It appears appellant also argues that the annuities in this case should be treated as payable on death ("P.O.D.") accounts as they existed prior to the enactment of R.C. Chapter 1709 and R.C. 2131.10. A payable on death account is an account where "the owner retains sole ownership of the account and only he may withdraw the proceeds or change the beneficiary during his lifetime." Giurbino v. Giurbino (1993),89 Ohio App.3d 646, 657. A P.O.D. account is contractual in nature, and it allows a person to make a testamentary disposition of assets without following the formalities of the Statute of Wills, R.C. Chapter 2107.Witt v. Ward (1989), 60 Ohio App.3d 21, 26. However, prior to the enactment of R.C. Chapter 1709 and R.C. 2131.10, a P.O.D. account was considered an ineffective gift. See In re Tonsic's Estate (1968),13 Ohio App.2d 195.
 {¶ 32} Both the depositor of a P.O.D. account and an annuitant are subject to the terms of their respective contracts with financial institutions and insurance companies. The owner of a P.O.D. account retains complete control and dominion over the funds in the account, but the contract normally directs the financial institution to pay the proceeds of the balance of the account to a named beneficiary upon the death of the depositor. Unlike an annuitant, a payable on death account holder may withdraw as much of the income as he wishes during his lifetime. However, an annuitant's rights with respect to the income payments of an annuity are governed by the terms of the annuity contract, and the typical annuity contract does not permit the annuitant to withdraw as much of the income as he wishes. Because an annuity is not subject to the control and dominion of the annuitant, it is unlike a P.O.D. account, which is subject to the complete control and dominion of the account holder.
 {¶ 33} Although Ohio courts have yet to make this explicit determination, return annuities are nonprobate assets and are not included in a decedent's probate estate. Return annuities that provide for a death beneficiary are similar to life insurance policies, and thus are to be treated similarly for estate planning and probate purposes. Simply because the owner of a return annuity has the right to receive periodic income payments during his life and has certain contractual rights does not mean that he has control and dominion over the annuity contract. The trial court did not err in determining that the decedent did not retain such dominion and control over the annuities as to render them in violation of the Statute of Wills. Further, the trial court correctly held that the proceeds paid to the beneficiaries of the annuity were not to be included in the decedent's probate estate. Accordingly, appellant's second assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and WALSH, J., concur.
[1] The appellees in this matter include: Robin Adams, Tammy Collins, Debra Kidwell, and Shirley Barker, who are the decedent's surviving children; Priscilla Jarvis (Brock), who is the decedent's stepdaughter; the Estate of Earl Adams; Timothy Reese, an investment agent; and Investar Insurance Agency, Firstar Bank, Financial Horizons, Prudential Insurance Company of America, Met Life Investors Insurance Company, American General Annuity Insurance Company/Financial Group, Nationwide and Financial/Life and Annuity/Family of Funds, and the Ohio National Life Insurance Company.
[2] For simplicity, the decedent's children and stepchild will be referred to as "beneficiaries."